THE CITY OF PERU, Plaintiff-Appellee, *v.* EUGENE BERNARDI *et al.*, Defendants-Appellants.—(KERASOTES-PONTIAC THEATRES, INC., Defendants.)

Third District   No. 80-73

Opinion filed May 21, 1980.

Eric B. Deobler, of Peter F. Ferracuti and Associates, of Ottawa, for appellants.

Charles W. Helmig and Douglas J. Schweickert, both of Peru, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, city of Peru, brought this action in the circuit court of La Salle County seeking demolition of an allegedly dangerous and unsafe building pursuant to the unsafe buildings act (Ill. Rev. Stat. 1977, ch. 24, par. 11—31—1 *et seq.*). The case was consolidated with a pending action in chancery wherein the same building, the Turnhalle, was the subject of the sought-after relief. The circuit court granted a decree of demolition for the city, and certain of the defendants now appeal from the denial of their post-trial motions.

On November 7, 1977, the city of Peru served notice of its intent to apply for an order of demolition or repair of the Turnhalle unless the owners took corrective action to eliminate certain enumerated dangerous and unsafe conditions in the structure. That notice was served upon Eugene and Theresa Bernardi, owners as tenants in common of the Turnhalle and operators within same building of the Bernardi Distributing Company. Also noticed were Kerasotes-Pontiac Theatres, Inc., and Paul F. Kiersch, the former an owner of an easement over the Turnhalle property and the latter a judgment creditor of Eugene Bernardi. The Bernardis responded to the city's notice, not with the corrective action demanded, but with a lawsuit seeking to enjoin any interference with the use of the Turnhalle.

When the conditions set forth in the notice were not remedied within the requisite period of time, the city filed a complaint in the circuit court praying for a decree granting the right to demolish the Turnhalle at the

expense of four named defendants, the same four who previously received the city's notice. The previously filed action for injunctive relief was consolidated with the city's cause on March 9, 1978, and more than a year later in September and October of 1979, a trial was held in the consolidated cases. At the termination of the trial, the court entered a decision dated December 13, 1979.

The court's decision determined that the Turnhalle was in a dangerous and unsafe condition and that the building's deterioration was so pervasive and fundamental that repairs would amount to substantial reconstruction. As evidence of that building's deteriorated condition, the trial judge found that the trusses under the roof were rotted, the mortar in weight-bearing walls was loosened by moisture and falling away, the east load-bearing wall showed lengthy cracks and no longer formed a cohesive unit, and the foundation was vastly weakened by the collapse of portions of the inner wythe of bricks. In light of these and other findings, the court authorized and directed the city of Peru to accept bids for demolition of the Turnhalle, to direct a subsequent demolition, and to assess the costs of the demolition as a lien against the real estate.

The defendants Bernardi filed a post-trial motion seeking to vacate the circuit court's decision and re-open the case for further evidence. As a basis for their motions, the Bernardis allege that the trial judge's determination was not supported by the evidence. Further, they offer additional evidence on the matter of the Turnhalle's state of disrepair, viz., a report based upon an inspection conducted by a Northbrook, Illinois, engineering firm. These motions to vacate and re-open were denied by the trial court. In other post-trial action before the trial court, the defendants Bernardi moved to strike the specifications adopted by the city for the demolition job and to strike all bids submitted to the city for the demolition work pursuant to the specifications. This motion was also denied below. On February 7, 1980, Eugene and Theresa Bernardi filed notice that they were appealing the denial of the motion to vacate and re-open as well as the motion to strike. The remaining defendants did not join in the appeal.

By action of the supreme court, the order of the court below has been stayed pending the outcome of our decision here.

We believe the motions to vacate and re-open were properly denied. There was ample evidence to support the December 13 opinion of the trial court. R. Dean Collins, a witness for the city, identified numerous symptoms of deterioration which he had observed upon inspection of the Turnhalle. Based on these observations, Mr. Collins reached the conclusion that in his expert opinion "the surrounding structures are imperiled by the existence of the [Turnhalle] in its present condition." Further, when asked whether repair or renovation should be attempted,

Mr. Collins concluded that "there is actually no part of [the Turnhalle] that could be saved and would be able to be used in a renovation." It was Mr. Collins' opinion that substantial portions of the structure exist in imminent danger of collapse. The qualifications of Mr. Collins to make these observations and testify in his professional opinion regarding the conclusions to be drawn therefrom were not objected to by the defendants at trial nor could such an objection have been easily sustained. With degrees in civil engineering and structural engineering, registration as a structural engineer in Illinois and four other States, and 25 years' work experience as a consulting engineer, Mr. Collins clearly had sufficient skill, knowledge and experience to offer opinions on a building's structural integrity, a subject beyond the ken of the ordinary layman. *Arnold N. May Builders, Inc. v. Bruketta* (1978), 60 Ill. App. 3d 926, 377 N.E.2d 579.

■■ The observations and professional opinions offered by Mr. Collins were supported by the testimony of another of the city's witnesses, Roger Chamlin. Mr. Chamlin is a civil engineer with extensive work background in the areas of structural design and architectural design. For the trier of fact to lend credence to Mr. Chamlin's professional opinions was not an abuse of discretion, particularly when his qualifications to offer such opinions were not challenged below. The testimony of plaintiff's experts, Mr. Collins and Mr. Chamlin, adequately supports the findings of the trial court.

■■ We also hold that the offer of defendants' additional evidence did not provide grounds for granting a motion to vacate and to re-open defendants' case. The propriety of vacating a judgment and re-opening a case to hear additional evidence is within the sound discretion of the trial court. (*Scully v. Wilhelm* (1938), 368 Ill. 573, 15 N.E.2d 313.) Here, we do not believe the court below abused that discretion. Only because of defendants' lack of diligence can it be persuasively argued that the additional evidence was unavailable prior to trial. We are advised that defendants did not know of the existence of the Northbrook firm until after the trial date, but there is no suggestion that even a superficial investigation would not have made such knowledge available to defendants. A written report which summarizes the additional evidence was included in the record on appeal in the form of an offer of proof. Having reviewed that report at length, and compared its contents to the testimony of defendants' two expert witnesses who appeared at trial, we are compelled to agree with the judge below who concluded that the additional evidence was essentially cumulative. Finally, nothing appears in the additional evidence which is so decisive in character as to be conclusive on the primary issue. Under such circumstances, there was no duty to permit the introduction of additional evidence. (*Scully v.*

*Wilhelm.*) We do not believe the La Salle County court erred in refusing to vacate its judgment and re-open the case.

■ The defendants Bernardi also appeal the denial of their motion to strike specifications and bids. They argue that the city's specifications unnecessarily and unreasonably increased the cost of the demolition work and that the lowest bid submitted to the city is $40,000 greater than calculated by another contractor. The trial court determined that the proper time to raise the issue of unreasonable demolition costs was at the time of foreclosure. The trial judge was correct in suggesting that the city will have the burden of proving the reasonableness of its expenditure in such a proceeding. (*City of Peru v. Bernardi* (1980), 81 Ill. App. 3d 227, 401 N.E.2d 1.) We believe this and other remedies[1] afford adequate protection of defendants' property interests and are consistent with the policy of the unsafe buildings act. The legislature has determined that hearings on these matters are to "be expedited by the court and shall be given precedence over *all* other suits." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 24, par. 11—31—1.) In the instant case, there was testimony that the Turnhalle was in imminent danger of collapse. The court found the building dangerous and unsafe. The legislative imperative for prompt action, and the perilous conditions threatening public health and safety, militate against creating this opportunity for further delay. (*City of Chicago v. James E. Mulligan Enterprises, Inc.* (1960), 27 Ill. App. 2d 481, 170 N.E.2d 13.) The Turnhalle has been adjudicated dangerous, unsafe, and without a feasible method of renovation. The public is now entitled to protection. The peril should be demolished with resolute speed. The property interests of the Bernardis will be protected at a later date when the city must justify the reasonableness of its costs and expenses. The court below correctly refused to continue jeopardizing the public safety. The motion to strike specifications and bids was properly denied.

For the foregoing reasons, the decision of the circuit court of La Salle County is affirmed. Upon the issuance of our mandate, the stay of enforcement ordered by the supreme court, is, by its own terms, lifted.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.

---

[1] Among the other remedies available to the owner of property against which a lien is assessed is a suit to remove a cloud on title. "A cloud on title has been defined as a semblance of title, legal or equitable, or a claim of interest in lands appearing in legal form but which is unfounded, or which it would be inequitable to enforce." (30 Ill. L. & Prac. *Quieting Title* §14 (1957).) To the extent a claim for lien by the city represents unreasonable expenditures, enforcement of the lien would be inequitable.