THE CITY OF BLOOMINGTON, Plaintiff-Appellee, v. BIBLE TRUTH CRUSADE, Defendant-Appellant (Champaign Federal Savings & Loan, Defendant).

Fourth District   No. 4—89—0791

Opinion filed May 24, 1990.

Gary L. Morris and Marcia F. Straub, both of Peoria, for appellant.

James D. Bass, of Thomas N. Jacob & Associates, of Bloomington, for appellee.

JUSTICE LUND delivered the opinion of the court:

On August 30, 1989, the circuit court of McLean County entered an order authorizing the City of Bloomington (City) to demolish a building belonging to the Bible Truth Crusade (Crusade). The Crusade now appeals. We affirm.

On August 14, 1987, the City filed a complaint pursuant to section 11—31—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 11—31—1), alleging that a building owned by the Crusade was dangerous and unsafe, and seeking authority to have the building demolished and to create a lien against the property for the cost of demolition. The Crusade answered with an affirmative defense, alleging the City was estopped from so proceeding. Pursuant to motion, the

court dismissed this defense.

A bench trial was held on August 25, 1989. The evidence establishes that the building in question is a former school building, located in a residential neighborhood, which the Crusade had used as a Bible College. In the early 1980's, the Crusade began demolition of the property. It was not able to complete the work within the time frames of various permits issued by the City. Finally, in June 1986, upon the lapsing of the last permit, the City issued a stop order and would grant no further permits. At the time of the trial, the structure was partially torn down. It had no roof and several walls were down. The lot was covered with bricks and other debris. While the property was enclosed with a cyclone wire fence, a city inspector has observed that it had been down at various times. A neighbor testified that wild animals, such as raccoons, opossums, and groundhogs, appeared to live in the rubble on the property.

Delbert Herman, the Crusade's founder and president, testified that demolition was started as a cooperative arrangement with the urban renewal department of the City. However, part way through the project, the City began withholding funds, necessitating the stoppage. He worked as the general contractor. At the time, he had a purchaser for the bricks. He also had bids to finish the demolition. It was his concern that the City would spend too much money removing the building and the Crusade would then have to pay for it.

The court found the property was unsafe and dangerous. Accordingly, it entered an order authorizing the City to finish demolition of the building, including removal of the foundation and footings, and to finish the grade and seed the lot. The order also provided the City was entitled to pursue its lien rights to recover the cost of the demolition. This appeal followed.

The Crusade initially argues the court improperly dismissed its affirmative defense. This defense was predicated on an estoppel theory. The pleading alleged in great detail that the City and the Crusade had entered into an agreement to tear the structure down, wherein the City would provide some funds and would cooperate and assist the Crusade in the project. The pleading alleged that the City then embarked upon a course of conduct contrary to this agreement by freezing the funds, refusing to issue permits, and by other conduct. Therefore, the Crusade asserted the City should be barred from seeking a court order to demolish the building, and the court erred by not allowing it to assert this defense. We disagree.

■ Section 11—31—1 provides municipalities with a mechanism to demolish a building that is dangerous or unsafe at the expense of

the property owner. (*Turpen v. City of St. Francisville* (1986), 145 Ill. App. 3d 891, 895, 495 N.E.2d 1351, 1353.) Its purpose is to provide municipalities the power to abate public nuisances which may prove detrimental to public health, safety, and welfare. (*City of Peru v. Bernardi* (1980), 81 Ill. App. 3d 227, 231, 401 N.E.2d 1, 3; *Turpen*, 145 Ill. App. 3d at 895, 495 N.E.2d at 1353-54.) It is also intended that this procedure be an expeditious one. (See *City of Chicago v. General Realty Corp.* (1971), 133 Ill. App. 2d 662, 667, 273 N.E.2d 712, 716; *City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941, 945, 349 N.E.2d 532, 538.) The questions to be answered are whether the building is dangerous and unsafe or abandoned, and whether the building is beyond reasonable repair. Ill. Rev. Stat. 1987, ch. 24, par. 11—31—1; *City of Aurora v. Meyer* (1967), 38 Ill. 2d 131, 137, 230 N.E.2d 200, 204.

■ We conclude it is not in keeping with the legislative intent and sound public policy to allow other issues to be introduced into the controversy. As noted, the statute is intended to provide a quick and effective means to remove structures that present danger and blight. (*Nielsen*, 38 Ill. App. 3d at 945, 349 N.E.2d at 538.) In fact, it provides that the hearing "shall be expedited by the court and shall be given precedence over all other suits." (Ill. Rev. Stat. 1987, ch. 24, par. 11—31—1(a).) The City's conduct has no bearing on the issues involved. The allegations contained in the asserted defense also comprise a lawsuit earlier filed by the Crusade against the City. It is through this mechanism, as the trial court observed, that the Crusade can obtain relief for any misconduct on the part of the City. To allow related issues to be drawn into a demolition or repair action would only complicate and delay the proceeding, endanger public safety, and defeat the purpose of the statute.

■ ■ The Crusade next contends the court erred in refusing its demand for a jury trial. The Illinois Constitution provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate." (Ill. Const. 1970, art. I, §13.) This same provision was provided in the 1870 Illinois Constitution. (Ill. Const. 1870, art. II, §5.) However, this language is designed to simply secure the right to trial by jury as it existed in common law actions when the Constitution was adopted. (*Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 148, 199 N.E.2d 797, 799; *People ex rel. Keith v. Keith* (1967), 38 Ill. 2d 405, 407, 231 N.E.2d 387, 389.) Since there had been no such right previously recognized, there is no constitutional right to trial by jury in cases involving equity. (*Lazarus*, 31 Ill. 2d at 148, 199 N.E.2d at 799.) Nor was this provision intended to guarantee a trial by jury in special

or statutory proceedings unknown to common law. (*Keith*, 38 Ill. 2d at 408, 231 N.E.2d at 389.) Since the present controversy qualifies in both regards, it is evident that no right to jury trial existed and, consequently, the court did not err in denying the request for one.

The Crusade finally contends that the court's order of demolition was overly broad. The order provided not only that the building be demolished, but also that the foundation and footings be removed and the property seeded. The Crusade objects to these latter provisions. It notes that it will ultimately bear the cost of this work. It does not believe it should have to pay for this work which is unnecessary and, in fact, will only increase the cost of any rebuilding since new footings and foundation will have to be built.

■ However, this case is not the proper forum to object to excessive demolition costs. In *City of Peru v. Bernardi* (1980), 84 Ill. App. 3d 235, 239, 405 N.E.2d 462, 465-66, the court addressed a similar contention and stated:

> "The defendants Bernardi also appeal the denial of their motion to strike specifications and bids. They argue that the city's specifications unnecessarily and unreasonably increased the cost of the demolition work and that the lowest bid submitted to the city is $40,000 greater than calculated by another contractor. The trial court determined that the proper time to raise the issue of unreasonable demolition costs was at the time of foreclosure. The trial judge was correct in suggesting that the city will have the burden of proving the reasonableness of its expenditure in such a proceeding. (*City of Peru v. Bernardi* (1980), 81 Ill. App. 3d 227, 401 N.E.2d 1.) We believe this and other remedies afford adequate protection of defendants' property interests and are consistent with the policy of the unsafe buildings act."

The Crusade's objection that the scope of the order improperly increased the costs of the demolition to be borne by the Crusade is, therefore, better raised at the proceeding in which the City would seek to foreclose its lien. The trial court also correctly observed that the Crusade has an adequate remedy in its other lawsuit with the City, in which it can seek damages for the cost of replacing the footings and foundations. Accordingly, this allegation of error is misplaced.

Affirmed.

SPITZ and STEIGMANN, JJ., concur.