STATE OIL COMPANY *et al.*, Petitioners-Appellants, v. THE PEOPLE OF THE STATE OF ILLINOIS *et al.*, Respondents-Appellees.—CHARLES ABRAHAM *et al.*, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Second District    Nos. 2—03—0463, 2—03—0493 cons.

Opinion filed September 30, 2004.

John C. Baumgartner, of Churchill, Baumgartner & Quinn, Ltd., of Grayslake, for Peter Anest, William Anest and State Oil Company.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), and Dorothy M. Gunn, of the Pollution Control Board, for appellees Environmental Protection Agency, Pollution Control Board and the People.

A. Bruce White, Barbara A. Magel, and Mark D. Erzen, all of Karaganis, White & Magel, Ltd., of Chicago, for Charles Abraham, Josephine Abraham, and Millstream Service, Inc.

JUSTICE GROMETER delivered the opinion of the court:
This consolidated appeal involves three distinct groups of parties. The State, the petitioner below, initiated this action by filing a

complaint naming the two other sets of parties as respondents. The first group of respondents, William Anest and Peter Anest, who formerly did business as S&S Petroleum Products, and State Oil Company (collectively State Oil), consist of the former owners and operators of a gasoline station located in the town of McHenry. The second group of respondents, Charles Abraham, Josephine Abraham, and Millstream Service, Inc. (collectively Millstream), are the current owners of the station. Millstream filed a cross-claim in which it sought to hold State Oil liable for any damages it suffered as a result of this action. Proceedings before the Pollution Control Board (Board) resulted in State Oil and Millstream being held jointly and severally liable for the State's remediation costs stemming from leaking petroleum products at the station as well as a $20,000 sanction against each party. State Oil and Millstream now appeal. Millstream has filed a motion to submit a supplementary appendix with its reply brief. We ordered the motion taken with the case and now grant it. In addition, for the reasons that follow, we affirm the order of the Board.

## I. BACKGROUND

The following is a summary of events leading up to the instant litigation. This litigation deals with events beginning approximately 20 years ago, which will not be set forth in detail. The following statement is intended to provide a sufficient background to facilitate an understanding of the opinion that follows. Additional facts will be presented during the course of the opinion as necessary to resolve the issue presented on review.

On December 5, 1984, an employee of State Oil Company contacted the Illinois Environmental Protection Agency (Agency) and reported that gasoline was leaking into Boone Creek from a service station (the site) located in McHenry County. The station bordered the creek. Evidence in the record indicates that leaks had previously occurred at the site in late 1983 or early 1984. In response to the report, Ed Osowski, an employee of the Agency, visited the site and filed an incident report. The incident report indicates, *inter alia*, that SET Environmental Services installed absorbent booms to contain the escaping gasoline. The report also states that two sumps, which were connected by a gravel trench, had been previously installed. The trench, however, was not deep enough to contain the product under certain conditions. An inspection by the Agency in May 1985 showed no gasoline leaking into Boone Creek; however, gasoline was observed entering the creek subsequently.

At the time of the incident report, the site was owned by William Anest and Peter Anest. It was operated by State Oil Company, which

was owned by the Anests. During the summer of 1985, Charles Abraham and Josephine Abraham purchased the site from the Anests. According to Charles, William Anest assured him that the tanks had been pressure tested, were not leaking, and had been approved by the Agency. The Abrahams, in fact, did later prevail in a state court action against the Anests, alleging fraud and breach of contract pertaining to the sale of the site. See *Abraham v. Anest*, No. 2—94—1062 (1995) (unpublished order under Supreme Court Rule 23).

In late 1986 and early 1987, gasoline again was observed leaking into the creek, which led to further Agency involvement and some remediation attempts by the Abrahams. A series of communications between State Oil, Millstream, and the Agency followed. In May 1987, Millstream retained Groundwater Technologies, Inc., a company that deals with environmental contamination, to address the problem. An inspection carried out on January 12, 1989, revealed that gasoline was still leaking into the creek.

In February 1989, the Agency initiated an emergency cleanup by sending state contractors to perform certain works at the site. These works included constructing two collection trenches and five recovery sumps, pumping the sumps to recover gasoline, and installing booms to contain gasoline leaking into the creek. Further discussions followed. On February 5, 1992, Millstream filed an application for reimbursement from the Underground Storage Tank Fund to fund further remediation of the site. It also obtained the Agency's approval for a remediation plan. After a delay of approximately five years, Millstream's request for funding was approved.

In December 1996, the State initiated the instant action. The Board ultimately found that Millstream and State Oil were jointly and severally liable for the funds the Agency spent in remediating the site, which it determined totaled $86,652.50. It imposed a $20,000 civil penalty against both Millstream and State Oil. It also ordered both sets of respondents to conduct any further work necessary to remediate the site and found them jointly and severally liable for any future costs incurred. Both Millstream and State Oil now appeal.

## II. ANALYSIS

While this appeal is consolidated, the parties raise a number of discrete issues in addition to several common issues. We will therefore address the parties' briefs separately, beginning with Millstream's brief. As to the common issues, we will address them in detail as we deal with Millstream's arguments. Only two issues, Millstream's first and State Oil's third, merit publication; therefore, with those exceptions, the balance of this opinion will not be published.

## A. MILLSTREAM'S ARGUMENTS

Millstream raises four primary issues on appeal. First, it contends that section 58.9(a)(1) of the Environmental Protection Act (Act) (415 ILCS 5/58.9(a)(1) (West 1996)) bars the imposition of joint and several liability for violations of the Act, replacing it with a system of proportionate share liability. Second, it argues that the State's exhibits pertaining to costs should not have been allowed into evidence. Third, it asserts that the cost award was contrary to the manifest weight of the evidence. Fourth, it alleges error in the Board's decision to impose sanctions in the amount of $20,000.

### 1. Joint and Several Liability

Millstream's first argument requires that we construe section 58.9(a)(1) of the Act (415 ILCS 5/58.9(a)(1) (West 1996)). Statutory construction presents a question of law, subject to *de novo* review. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). In construing a statute, our goal is to ascertain and give effect to the intent of the legislature. *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 508 (2004). The plain language of a statute is, of course, the best indication of the legislature's intent. *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003). All other rules of construction are subordinate to that principle. *Metzger*, 209 Ill. 2d at 34. Thus, unless an ambiguity exists in the language of the statute, we must give its plain meaning effect without resorting to further interpretive aids. *Williams v. Davet*, 345 Ill. App. 3d 595, 602 (2003).

Section 58.9 is part of Title XVII of the Act (415 ILCS 5/58 *et seq.* (West 1996)). It provides, in pertinent part, as follows:

"Notwithstanding any other provisions of this Act to the contrary, including subsection (f) of Section 22.2, in no event may the Agency, the State of Illinois, or any person bring an action pursuant to this Act or the Groundwater Protection Act to require any person to conduct remedial action or to seek recovery of costs for remedial activity conducted by the State of Illinois or any person beyond the remediation of releases of regulated substances that may be attributed to being proximately caused by such person's act or omission or beyond such person's proportionate degree of responsibility for costs of the remedial action of releases of regulated substances that were proximately caused or contributed to by 2 or more persons." 415 ILCS 5/58.9(a)(1) (West 1996).

Millstream contends that section 58.9(a)(1) establishes a system of proportionate share liability for all violations of the Act. Millstream argues that the first clause ("Notwithstanding any other provisions of this Act to the contrary") means that this provision takes precedence over any contrary provisions in the Act.

The State counters that section 58.1(a)(2) of the Act (415 ILCS 5/58.1(a)(2) (West 1996)), titled "Applicability," precludes Millstream from invoking any of the provisions of Title XVII. This section states:

> "Any person, including persons required to perform investigations and remediations under this Act, may elect to proceed under this Title unless (i) the site is on the National Priorities List (Appendix B of 40 CFR 300), (ii) the site is a treatment, storage, or disposal site for which a permit has been issued, or that is subject to closure requirements under federal or State solid or hazardous waste laws, (iii) *the site is subject to federal or State underground storage tank laws*, or (iv) investigation or remedial action at the site has been required by a federal court order or an order issued by the United States Environmental Protection Agency. To the extent allowed by federal law and regulations, the sites listed under items (i), (ii), (iii), and (iv) may utilize the provisions of this Title, including the procedures for establishing risk-based remediation objectives under Section 58.5." (Emphasis added.) 415 ILCS 5/58.1(a)(2) (West 1996).

According to the State, since the service station operated by Millstream is subject to underground storage tank laws, section 58.1(a)(2) exempts the station from the whole of Title XVII, which includes the proportionate share liability provision upon which Millstream relies.

We agree with the State. Put simply, one must enter through a door before one can throw something out of the window. In other words, Millstream is not entitled to invoke the provisions of Title XVII unless Title XVII is applicable to it in the first place. A statute must be read as a whole, and all relevant parts must be considered. *People v. Peco*, 345 Ill. App. 3d 724, 731 (2004). Moreover, a statute should not be read in isolation, but in the context of the act of which it is a part. *People ex. rel Birkett v. City of Chicago*, 202 Ill. 2d 36, 49 (2002). Thus, section 58.9(a)(1) must be read in light of the rest of Title XVII, including section 58.1(a)(2). A plain reading of section 58.1(a)(2) shows that Millstream is excluded from the operation of Title XVII as a whole. Accordingly, Millstream's argument must fail.

Even if we were to find that the interplay between section 58.1(a)(2) and section 58.9(a)(1) did create an ambiguity, we would nevertheless reject Millstream's argument. In *In re Proportionate Share Liability*, Ill. Pollution Control Bd. Op. R97—16 (December 3, 1998), the Board considered the relationship between the two statutes and initially concluded that, read together, they were ambiguous. While we disagree with the Board's initial premise, we nonetheless find the remainder of its opinion well reasoned and instructive. Having found an ambiguity, the Board considered the statutes' purpose and legislative history. Ultimately, it concluded that the legislature

intended that section 58.9(a)(1) be limited by section 58.1(a)(2). Had we not determined that the statutory scheme set forth in Title XVII unambiguously excluded Millstream from invoking its provisions, we would follow the reasoning of the Board.

### 2. The Admissibility of the State's Cost Exhibits

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 3. The Award of Costs

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 4. The Penalty

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

## B. STATE OIL'S ARGUMENTS

State Oil also raises numerous arguments; however, some of them are duplicative of Millstream's arguments. It first contends that relief could not be awarded against it under count II of the State's complaint, which sought reimbursement for costs, because it was not named in that count of the complaint. Second, it argues that section 58.9(a)(1) of the Act (415 ILCS 5/58.9(a)(1) (West 1996)) bars the imposition of joint and several liability. Third, it contends that section 57.12 of the Act (415 ILCS 5/57.12 (West 1996)), which imposes liability upon the owner of a leaking underground storage tank for costs incurred by the state, does not apply to it as the *former* owner of the site. Fourth, it challenges the evidence upon which the award of costs was based. Fifth, it contends that the penalty imposed upon it was based upon matters that were not alleged. Sixth, it argues that summary judgment was not appropriate. Seventh, in two separate arguments that we will address together, it contends that the penalty assessed against it was excessive and punitive. Only the third merits publication.

### 1. Notice and Due Process

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 2. Joint and Several Liability

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 3. Whether Section 57.12 of the Act Applies to State Oil

■ State Oil next contends that section 57.12 (415 ILCS 5/57.12 (West 1996)) does not apply to it. First, it asserts that it escapes the

statute's operation because it is a *former* owner, rather than an owner, of the station. Section 57.12 provides, in pertinent part, as follows:

"Notwithstanding any other provision or rule of law, *the owner or operator, or both,* of an underground storage tank shall be liable for all costs of investigation, preventive action, corrective action and enforcement action incurred by the State of Illinois resulting from an underground storage tank." (Emphasis added.) 415 ILCS 5/57.12(a) (West 1996).

While it is true that the plain language of a statute is the best indication of the legislature's intent (*Hall*, 208 Ill. 2d at 330), it is also true that a statute must not be construed so that it produces an absurd result (*High v. Chicago Transit Authority*, 345 Ill. App. 3d 964, 969 (2004)). Allowing an owner to escape liability by simply selling a property would, in our estimation, be absurd, and we cannot attribute such an intent to the legislature. In short, State Oil was the owner when the problem began. That the problem continued beyond its ownership of the property does not absolve it from responsibility.

State Oil also briefly contends, in a rather undeveloped argument, that section 57.12 should not be given retroactive effect. In light of our supreme court's recent decision in *Caveney v. Bower*, 207 Ill. 2d 82 (2003), the retroactivity analysis applied in this state consists of a single inquiry. To make this determination, a court must simply ascertain whether the legislature expressly indicated the temporal reach of a new law. *Caveney*, 207 Ill. 2d at 94. If the legislature did not do so, section 4 of the Statute on Statutes controls (5 ILCS 70/4 (West 2002)). *Caveney*, 207 Ill. 2d at 94. State Oil nakedly asserts that there is no indication that the legislature intended the statute to be given retroactive application and that it should not be applied retroactively because it would change the legal obligations of owners of leaking underground storage tanks. Under *Caveney*, State Oil's latter contentions are not relevant.

Regarding its first contention, we disagree. We find indications in section 2 of the Act (15 ILCS 5/2 (West 1996)) that the legislature generally intended the Act to be given retroactive application. Specifically, section 2(a)(vi) states, "despite the existing laws and regulations concerning environmental damage there exist *continuing* destruction and damage to the environment." (Emphasis added.) 415 ILCS 5/2(a)(vi) (West 1996). Section 2(b) states that one of the purposes of the Act is to restore the environment. 415 ILCS 5/2(b) (West 1996). Thus, it is clear that the legislature intended the Act to address ongoing problems, which by definition existed at the time that the Act was enacted. Additionally, the Act calls for liberal construction to effectuate its purposes. 415 ILCS 5/2(c) (West 1996). Accordingly, we find

that the legislature manifested an intent that the Act be generally given retroactive application and we reject State Oil's argument to the contrary.

### 4. The Cost Award and the Manifest Weight of the Evidence

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 5. Whether the Penalty Was Based on Matters That Were Not Alleged

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 6. Summary Judgment

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 7. The Penalty

The following material is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

## III. CONCLUSION

In the unpublished portions of this opinion, we rejected the contentions of error raised by both Millstream and State Oil. The order of the Pollution Control Board is affirmed.

Affirmed.

O'MALLEY, P.J., and BOWMAN, J., concur.