2017 IL App (1st) 162449

SECOND DIVISION
September 26, 2017

No. 1-16-2449

| | | |
|---|---|---|
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | Appeal from the Circuit |
| | ) | Court of Cook County |
| v. | ) | County Department, |
| | ) | Municipal Division |
| JOHN SOLUDCZYK; MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., as Nominee for | ) | |
| Freedom Mortgage Corporation; FREEDOM MORTGAGE | ) | |
| CORPORATION; FEDERAL NATIONAL MORTGAGE | ) | Case No. 12 |
| ASSOCIATION; JPMORGAN CHASE BANK, N.A.; | ) | M1 400142 |
| UNKNOWN OWNERS; and NONRECORD | ) | |
| CLAIMANTS, | ) | Hon. Pamela H. Gillespie, |
| | ) | Judge Presiding. |
| Defendants | ) | |
| | ) | |
| (Federal National Mortgage Association, Defendant- | ) | |
| Appellant). | ) | |

JUSTICE MASON delivered the judgment of the court, with opinion.
Presiding Justice Neville and Justice Hyman concurred in the judgment and opinion.

## OPINION

¶ 1        The City of Chicago (City) seeks to enforce an *in personam* money judgment against Federal National Mortgage Association (Fannie Mae) representing the amount the City expended to demolish certain property. Fannie Mae owned the property briefly after it purchased it at a foreclosure sale. At the time the City demolished the property and perfected its demolition lien, Fannie Mae, having sold the property more than two years earlier, was not the owner. We find that the procedure by which the City obtained its judgment did not comport with the statute authorizing a municipality to seek a money judgment for demolition costs, and therefore, we reverse.

¶ 2        The City filed this case in the circuit court of Cook County on January 17, 2012, asserting various claims arising out of alleged dangerous and unsafe conditions at

property located at 535 W. 60th Street in Chicago. The complaint alleged a variety of dangerous conditions at the property, including (i) "stripped and inoperable" electrical and plumbing systems, (ii) lack of electric service to the building, (iii) smoke, water, and fire damage and (iv) structural damage to the joists, rafters, and roof.

¶ 3        Named as defendants were the property's owner of record, John Soludczyk, and various lienholders, including JPMorgan Chase Bank, N.A. (JPMorgan Chase), which was the plaintiff in a pending mortgage foreclosure against the property. According to public records, Soludczyk acquired the property by quitclaim deed on March 31, 2005, and JPMorgan Chase was the assignee of Mortgage Electronic Registration Systems, Inc. (MERS), the original lender that recorded its lien on the property the same date Soludczyk took title.[1]

¶ 4        At issue on appeal are two counts of the complaint: count I, which sought to require the defendants to demolish the property or, alternatively, allow the City to demolish the property under article 11, division 31 of the Illinois Municipal Code (65 ILCS 5/11-31-1(a) (West 2010)), sometimes known as the unsafe property statute, and count IV, which sought a declaration that the property was a public nuisance and injunctive relief against defendants to abate the nuisance pursuant to the City's public nuisance ordinance (Chicago Municipal Code § 7-28-060 (amend. Aug. 30, 2000)). In the prayer for relief under count I, the City requested an order assessing the costs of the demolition "as a judgment against the defendants" and "[p]ermitting foreclosure of any

---

[1]See Cook County Recorder of Deeds, http://cookrecorder.com (last visited September 18, 2017) (enter "20-16-311-023-0000" in PIN-Address Quick Search bar, then follow "Show" hyperlink). We may take judicial notice of information posted on the Recorder of Deeds website. See Ill. R. Evid. 201(b) (eff. Jan. 1, 2011) (court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *JP Morgan Chase Bank, N.A. v. Bank of America, N.A.*, 2015 IL App (1st) 140428, ¶ 44 n.4.

City of Chicago liens entered against the subject property in this proceeding." Count IV did not separately request any relief other than abatement of the nuisance.

¶ 5    In the foreclosure proceedings, JPMorgan Chase obtained a judgment of foreclosure and purchased the property at the foreclosure sale, which was confirmed by order entered on June 13, 2012. We gather from the foreclosure documents in the record that the mortgage was insured by Fannie Mae and that, following the sale, Fannie Mae became the certificate holder and acquired the property. The City then named Fannie Mae as a defendant in this case. After Fannie Mae was added as a defendant, the City, without explanation, dismissed the case against Soludzcyk and JPMorgan Chase.

¶ 6    Although Fannie Mae filed an appearance through counsel, it does not appear that it actively participated in the demolition case, and the only orders entered against Fannie Mae during the proceedings required it to "secure and keep secure the entire subject property by maintaining the property as secure and vacant." In particular, the record contains no demand by the City that Fannie Mae remedy the dangerous and unsafe conditions at the property. On appeal, the City contends that an order of default was entered against Fannie Mae, but no such order appears in the record.

¶ 7    Fannie Mae owned the property for 10 months—from June 13, 2012, until April 11, 2013—when it sold the property to Rachel Branton. The City did not thereafter name Branton as a defendant.

¶ 8    On April 9, 2013, two days before the sale to Branton, an order of demolition was entered in favor of the City and against Fannie Mae, the only remaining defendant, on counts I and IV of the complaint. The City dismissed the other counts of the complaint. MERS, which had also been named as a defendant in the original complaint, was

dismissed by the City on the same date the demolition order was entered.

¶ 9        The demolition order found that the conditions at the property were beyond repair and that a judgment in favor of the City on counts I and IV seeking demolition authority was warranted. The order provided that the City's authority to demolish the property "shall become effective May 9, 2013." The order also stipulated that the City's demolition of the property would "result in a statutory *in rem* lien that attaches only to the subject parcel of real estate." The order further provided that "[i]f the City seeks a personal judgment against any individual party to this action, it will proceed by separate motion directed to that party." The court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay enforcement or appeal of the order and retained jurisdiction "for the purpose of ascertaining demolition costs for entry of a money judgment against the defendant owners, as defined by the applicable statutes and ordinances." No party appealed the demolition order.

¶ 10       The City did not demolish the property until September 17, 2015, nearly 2½ years after entry of the demolition order and Fannie Mae's sale to Branton. The City's lien for the demolition costs was recorded against the property on February 24, 2016.

¶ 11       On March 29, 2016, the City filed a "Motion to Ascertain Demolition and Other Costs." Notice of the motion was sent only to Fannie Mae. The motion represented that the City had incurred demolition and litigation costs totaling $27,042 and requested a personal money judgment against Fannie Mae in the same amount. No authority for entering the judgment against Fannie Mae was cited in the City's motion, and no support for the amount sought was attached to the motion.

¶ 12       Fannie Mae responded to the City's motion, objecting to the entry of judgment

because (i) the requested relief was unjust given that Fannie Mae was not the owner of the property when it fell into disrepair, when the City demolished it, or when the City's lien became effective by recordation, (ii) the City's attempt to impose personal liability on Fannie Mae was not authorized under the Illinois Municipal Code, and (iii) even if the Illinois Municipal Code applied, the City had not followed the required procedure to obtain a money judgment, which necessitated either foreclosure of the City's demolition lien or the filing of a separate action under the Code of Civil Procedure seeking a money judgment.

¶ 13    In support of its motion, the City pointed to the retention of jurisdiction in the demolition order and argued that the Illinois Municipal Code authorized a money judgment against the "owner or owners" of demolished property. 65 ILCS 5/11-31-1 (West 2010). As Fannie Mae was an owner of the property when the demolition order was entered, the City argued it could impose personal liability on Fannie Mae for demolition costs even if Fannie Mae did not currently own the property. The City further argued that it could obtain a money judgment against Fannie Mae via a motion in the demolition case and that it was not required to foreclose its demolition lien or pursue a separate civil action.

¶ 14    The trial court agreed with the City. On June 13, 2016, the court entered an order finding that "because the [d]emolition order was entered while Fannie Mae was the owner of the property and because the statute does not provide for relief from liability upon transfer of the property, Fannie Mae is liable for [d]emolition costs." The court entered a personal money judgment against Fannie Mae in the amount of $27,042. Although Fannie Mae was at that point the only party-defendant in the case, the court

also granted the City leave to file a petition to foreclose its demolition lien, either as part of the demolition case or as a separate proceeding and retained jurisdiction "solely for the purpose of adjudicating the foreclosure." The trial court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason for delaying enforcement or appeal of its order. Fannie Mae filed a timely notice of appeal.

¶ 15    We first address the basis for our jurisdiction. Fannie Mae posits that we have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) on appeal from a final judgment in the demolition case. Alternatively, Fannie Mae contends the trial court's finding pursuant to Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) confers appellate jurisdiction. The City relies exclusively on jurisdiction under Rule 304(a), which, in cases involving multiple parties or claims for relief, allows an appeal from a final judgment "as to one or more but fewer than all of the parties or claims," provided the court makes a finding that "there is no just reason for delaying either enforcement or appeal or both." *Id.*

¶ 16    At the time the trial court entered its June 13, 2016, judgment against Fannie Mae, there were no other defendants in the case and no other claims pending. Although the City argues in its brief that there were other claims asserted and other parties to the case, this overlooks that those parties and claims were voluntarily dismissed in 2012, before entry of the demolition order and long before the property was demolished. There is no indication in the record that the City ever revived any other claims or joined any other parties after they were dismissed. The court's order finally resolved, as the City concedes, its only remaining claim against Fannie Mae.

¶ 17    The fact that the court retained jurisdiction, for some unspecified period of time,

over a claim the City had not yet asserted[2] against persons or entities not then parties to the case cannot transform the court's final judgment into something else. If the City later sought to reopen the case to pursue further proceedings against other parties, the court's retention of jurisdiction would potentially apply, but that does not mean that the court's order was anything other than a final judgment.

¶ 18    Therefore, we have jurisdiction over Fannie Mae's appeal of a final judgment pursuant to Rule 301. We discourage the inclusion of Rule 304(a) findings as a matter of course when the order entered finally resolves the litigation in its entirety.

¶ 19    In this case of first impression, we must construe the Illinois Municipal Code to determine whether it authorizes a municipality to impose personal liability for demolition costs simply by filing a motion in the demolition case or whether those the municipality seeks to hold personally liable for those costs are entitled to greater procedural protections. We review this question of law *de novo. Nelson v. Artley*, 2015 IL 118058, ¶ 13.

¶ 20    As in any case involving statutory construction, we start with the language of the statute to determine the legislature's intent. "Our primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning." *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 24. In the absence of an ambiguity in the statute's language, we must apply it as written without resort to extrinsic aids to statutory construction. *Id.* (citing *People v. Collins*, 214 Ill. 2d 206, 214 (2005)).

_____

[2]Disavowing any attempt at a double recovery, the City represents that since entry of the June 13, 2016, order, it has not commenced proceedings to foreclose its lien.

¶ 21    Although the parties discuss only those subsections of section 11-31-1 of the Illinois Municipal Code directly at issue here, a discussion of the section's overall structure is helpful to place those provisions in context. See *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292, ¶ 10 (court should not consider words and phrases in isolation but instead should interpret each word and phrase in light of the statute as a whole).

¶ 22    Various subsections of section 11-31-1 of the Illinois Municipal Code specify procedures municipalities and others may pursue to remedy unsafe and hazardous buildings within a municipality's borders. Under subsection (a), the section invoked by the City in the trial court, a municipality may apply to demolish or take other action to address dangerous and unsafe buildings. 65 ILCS 5/11-31-1(a) (West 2010). To accomplish this, the municipality must apply to the circuit court "for an order authorizing action to be taken with respect to a building if the owner or owners of the building, including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to put the building in a safe condition or to demolish it." *Id.* The hearing on the application "shall be expedited by the court and shall be given precedence over all other suits." *Id.* Under subsection (b), a landowner or tenant of property within 1200 feet of any dangerous or unsafe building may petition the municipality to institute an action under subsection (a), and failing action by the municipality, the affected party may file an action seeking demolition, repair, or other relief. 65 ILCS 5/11-31-1(b) (West 2010). If the owner fails to take the action ordered by the court, the petitioner may ask the court to join the municipality as a party and the municipality may be ordered to take the action required to remedy the unsafe or hazardous conditions. Subsections (d), (e), and (f)

address, respectively, (i) a municipality's ability to have property declared abandoned so that the municipality may obtain title (65 ILCS 5/11-31-1(d) (West 2010)), (ii) an expedited procedure for removing unsafe and hazardous buildings of less than three stories, potentially without the necessity of court proceedings (65 ILCS 5/11-31-1(e) (West 2010)), and (iii) a procedure for remediating environmental hazards at abandoned property (65 ILCS 5/11-31-1(f) (West 2010)).

¶ 23        Certain subsections of section 11-31-1 of the Illinois Municipal Code also contain enforcement mechanisms. In particular, subsections (a), (b), and (f) provide for a lien to be recorded against the property in the amount of the demolition, repair, remediation, or other cost, which, unless enforced under subsection (c), may be foreclosed in separate proceedings under the Illinois Mortgage Foreclosure Law relating to mortgages or mechanic's liens (735 ILCS 5/15-1501 *et seq.* (West 2010)). 65 ILCS 5/11-31-1(a), (b), (f) (West 2012). Subsection (c), in turn, allows for a municipality to enforce its lien by petitioning the court presiding over the building case to retain jurisdiction to conduct proceedings to foreclose the lien. 65 ILCS 5/11-31-1(c) (West 2010). An action to foreclose the lien may be commenced "at any time after the date of filing of the notice of lien" with the recorder of deeds. 65 ILCS 5/11-31-1(a), (b), (f) (West 2012). However enforced, a lien recorded within six months of the demolition or repair of the building is "superior to all prior existing liens and encumbrances, except taxes." *Id.* The costs of any foreclosure proceedings, whether brought separately or as part of the building case, and any other costs related to enforcement of subsections (a), (b), or (f) "are a lien on the real estate and are recoverable by the municipality from the owner or owners of the real estate." 65 ILCS 5/11-31-1(a)-(c), (f) (West 2012).

¶ 24        Finally, there are enforcement provisions unique to subsection (a). Subsection (a) itself provides that a municipality may proceed against former owners of the property to recover the cost of demolition if those owners transferred the property within the 15-day period following notice from the municipality of the property's unsafe or hazardous conditions. 65 ILCS 5/11-31-1(a) (West 2010) (cost of demolition or repair incurred by municipality or third parties "recoverable from the owner or owners of the real estate or the previous owner or both if the property was transferred during the 15 day notice period"). Separately, under subsection (g) of section 11-31-1 of the Illinois Municipal Code, when a municipality has obtained a lien under subsection (a), it may also bring an action for a money judgment

> "against the owner or owners of the real estate in the amount of the lien in the same manner as provided for bringing causes of action in Article II of the Code of Civil Procedure [(735 ILCS 5/2-101 *et seq.* (West 2016))] and, upon obtaining a judgment, file a judgment lien against all of the real estate of the owner or owners and enforce that lien as provided in Article XII of the Code of Civil Procedure [(735 ILCS 5/12-101 *et seq.* (West 2016))]." 65 ILCS 5/11-31-1(g) (West 2010).

¶ 25        The Illinois Municipal Code does not anywhere provide for the filing of a *motion* by the municipality to obtain a money judgment against the "owner or owners" in the amount of demolition costs. Rather, the Illinois Municipal Code's plain language requires the municipality, at its election, to pursue either foreclosure of its demolition lien or a separate civil action against those owners whom it seeks to hold personally liable.

¶ 26        The Illinois Municipal Code provides a quick and efficient means for a municipality to remove structures that pose a threat to public health and safety. *Village of*

*Lake Villa v. Stokovich*, 211 Ill. 2d 106, 130 (2004); *City of Bloomington v. Bible Truth Crusade*, 197 Ill. App. 3d 793, 796 (1990) ("[The Illinois Municipal Code's] purpose is to provide municipalities the power to abate public nuisances which may prove detrimental to public health, safety, and welfare. [Citations.] It is also intended that this procedure be an expeditious one."). To that end, when a municipality applies to demolish a building under subsection (a) of section 11-31-1, the court is required to make only two findings: (i) the building is dangerous and unsafe and (ii) the building is beyond reasonable repair. *Village of Lake Villa*, 211 Ill. 2d at 130-31 (citing *City of Aurora v. Meyer*, 38 Ill. 2d 131, 133 (1967)). Issues raised by an owner that require consideration of matters beyond the two required findings have been found more properly relegated to resolution elsewhere. See *City of Bloomington*, 197 Ill. App. 3d at 796 (landowner's claim of municipality's misconduct in withholding funds it agreed to provide for demolition had no bearing on relevant issues in demolition proceeding and were more properly raised in other pending litigation); *City of Peru v. Bernardi*, 84 Ill. App. 3d 235, 239 (1980) (landowners' claims that City's demolition costs were excessive reserved for resolution in foreclosure proceedings; "The property interests of the [landowners] will be protected at a later date when the city must justify the reasonableness of its costs and expenses.").

¶ 27    Also, when the legislature intended to subject prior owners of real property to automatic liability under the Illinois Municipal Code, it so provided. As noted, section 11-31-1(a) specifically provides for recovery of demolition costs against current or prior owners of real estate, "or both," if the property is transferred during the 15-day period after notice from the municipality of the property's unsafe or hazardous conditions. 65

ILCS 5/11-31-1(a) (West 2010). Because the legislature articulated a particular condition that would automatically subject a prior owner to liability for demolition costs, we hesitate to assume, as the City does, that anyone who ever owned the property, no matter how briefly, is liable for demolition costs under any circumstances. See *People v. Edwards*, 2012 IL 111711, ¶ 27 ("Where language is included in one section of a statute but omitted in another section of the same statute, we presume the legislature acted intentionally and purposely in the inclusion or exclusion." (citing *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 24)).

¶ 28    Despite the Illinois Municipal Code's straightforward language, the City argues that the filing of a motion for entry of a money judgment against Fannie Mae was appropriate and that it was not required to do anything other than that in order to hold Fannie Mae liable for the costs it incurred in demolishing the building. In other words, the City contends that by filing a motion that entails (i) no showing of a legally or factually viable claim against Fannie Mae, (ii) no burden of proof, and (iii) no evaluation of the sufficiency of the evidence, it may seek to impose personal liability for demolition and other costs on anyone who ever owned the property. The City further views the Illinois Municipal Code's language that a municipality "may" enforce its lien in several ways as permissive and argues that pursuit of a separate action to foreclose and enforce the demolition lien is not required. We disagree.

¶ 29    As a threshold matter, if the City is correct, the Illinois Municipal Code's provisions for alternative means of enforcing the demolition lien would be surplusage. This interpretation of the Illinois Municipal Code would violate a fundamental precept of statutory construction. "Each word, clause and sentence of a statute must be given

reasonable meaning, if possible, and should not be rendered superfluous." *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26; *Majmudar*, 2013 IL App (1st) 130292, ¶ 10. The City also does not explain why a municipality would ever resort to foreclosure proceedings or a separate action to enforce a demolition lien and obtain a money judgment if the same result could be accomplished merely through the filing of a motion following recordation of the lien.

¶ 30　　　　But beyond the applicable principles of statutory construction that compel the result we reach, the City's position must be rejected because it violates fundamental principles of due process.

¶ 31　　　　The reason for the Illinois Municipal Code's various provisions regarding the post-demolition or repair enforcement of a municipality's lien is obvious: an action seeking the demolition or repair of an unsafe and hazardous building is an expedited, *in rem* proceeding directed only against the property. *Village of Lake Villa*, 211 Ill. 2d at 130. The public policy favoring the ability of municipalities to expeditiously demolish or repair structures that pose hazards to public health and safety supports the abbreviated procedure and limited burden of proof required to achieve that result.

¶ 32　　　　Such proceedings are not designed to resolve issues concerning which owner or owners of the property are responsible for the property's unsafe and hazardous condition and should therefore be liable for the demolition or repair costs. A municipality may be content, as Fannie Mae points out, to rely on its recorded lien as a cloud on title that must be paid before the property may be sold. If that is the case, the municipality need do nothing other than perfect its lien. But if a municipality seeks to affirmatively recover the amount of the lien, the Illinois Municipal Code contemplates that the municipality will

either (i) foreclose the lien, which is superior to all other prior encumbrances on the property, and obtain satisfaction of the lien through a judicial sale of the property or (ii) sue the owner or owners in a separate civil action, in which case, any money judgment obtained will be enforceable as any other civil money judgment.

¶ 33        The City's interpretation of the Illinois Municipal Code—allowing it to simply file a motion in order to impose personal liability—would impair the due process rights of those it seeks to hold personally liable for demolition costs. This is best illustrated by Fannie Mae's position in this case. Fannie Mae acquired the property through a foreclosure sale,[3] long after the property's unsafe and hazardous conditions prompted the City's action. There is no evidence in the record that Fannie Mae exacerbated the property's condition during the 10 months it owned the property, and the only action Fannie Mae was ordered to take was to maintain the property as secure and vacant. The City makes much of the fact that Fannie Mae did not answer the demolition complaint and argues that the complaint's allegations were, therefore, deemed admitted. But the City overlooks that there were no allegations in the complaint directed to Fannie Mae and, consequently, nothing for Fannie Mae to answer. Fannie Mae was under no constraints to retain ownership of the property, and the record does not disclose any relationship between the demolition order and the sale to Branton. In particular, the record contains no advance notice directed to Fannie Mae or anyone else of the April 9, 2013, order of demolition. Thus, there is no basis to conclude that Fannie Mae rushed to

---

[3]The record does not reveal the circumstances of Fannie Mae's acquisition of the property. Given that the mortgage documents were on standard forms approved by Fannie Mae, it is reasonable to assume that at least a portion of the original loan to Soludczyk was insured by Fannie Mae and that once Fannie Mae paid out after default, it accepted an assignment of the certificate of sale from JPMorgan Chase.

complete the sale to Branton in an attempt to avoid liability for demolition costs. There is also no indication that, at the time of the sale to Branton, Fannie Mae was aware that, years later, the City would seek payment of demolition costs (not yet incurred) only from Fannie Mae and not from previous owners whose conduct caused the property's condition. Yet, with no opportunity to contest the legal and factual basis for or amount of its liability for demolition costs through motion practice, discovery, or an evidentiary hearing, Fannie Mae was adjudged solely responsible for those costs. See *City of Peru*, 84 Ill. App. 3d at 239 (recognizing that property owner's interests would be protected by opportunity to contest reasonableness of demolition costs in later foreclosure proceeding). We cannot countenance the result advocated by the City as it is antithetical to the notice and opportunity to be heard that are the hallmarks of due process. *Passalino v. City of Zion*, 237 Ill. 2d 118, 124 (2009); see also *People v. Al Momani*, 2016 IL App (4th) 150192, ¶ 10 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks removed.) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976))).

¶ 34    The City relies on *State Oil Co. v. Illinois*, 352 Ill. App. 3d 813 (2004), to argue that a construction of the Illinois Municipal Code that would allow an owner of property to escape liability for demolition costs by selling the property would frustrate the Illinois Municipal Code's purposes. *State Oil* involved liability for remediation of environmental contamination as a result of leaks from underground storage tanks at a former gas station. Section 57.12 of the Environmental Protection Act (415 ILCS 5/57.12(f)(1) (West 1996)) provided that "[t]he owner or operator, or both, of an underground storage tank may be liable" for all costs incurred by the State to remediate environmental conditions stemming

from the tank. State Oil, the entity that operated the gas station when the leaks began, argued its status as a former owner absolved it of liability for the ongoing contamination. 352 Ill. App. 3d at 818-19. Rejecting this contention, the court found, "[a]llowing an owner to escape liability by simply selling a property would *** be absurd, and we cannot attribute such an intent to the legislature." *Id.* at 819. And the circuit court appears to have adopted that reasoning when it noted that the Illinois Municipal Code "does not provide for relief from liability upon transfer of the property."

¶ 35    In fact, *State Oil* illustrates why the City's position is incorrect. In *State Oil*, the State sued both the former owners and operator of the gas station as well as the current owners and operator. The current owners pursued a cross-claim against the former owners alleging that the former owners falsely represented at the time the property was purchased that the tanks were not leaking and that the current owners did nothing to contribute to the leaks. Thus, in the context of the State's effort to hold them liable, the current owners had the opportunity to litigate their claims against those they contended were responsible for the contamination. The procedure advocated by the City affords Fannie Mae no similar opportunity.

¶ 36    And any argument that the City believed that liability for demolition costs is joint and several is belied by its conduct in dismissing those parties who were likely responsible for the property's condition in the first place (Soludczyk, MERS, and JPMorgan Chase) and in failing to join the party who allowed the property to remain in its unsafe and hazardous condition for 2½ years following the demolition order (Branton).

¶ 37    The City argues that it was "free to limit its litigation costs" by selecting Fannie Mae as the party to pay the demolition costs, to the exclusion of other owners of the property. This argument makes no sense. If, as the City contends, it was required only to file a motion in order to hold any owner liable for demolition costs, it would have incurred no additional cost to allow Soludczyk, MERS, and JPMorgan Chase to remain as parties, add Branton after her acquisition of the property, and include all parties in its notice of motion seeking payment of the demolition costs.

¶ 38    The City raises a new argument on appeal in favor of the judgment against Fannie Mae, citing provisions of the Chicago Municipal Code (Chicago Municipal Code, §§ 13-12-130 (amend. Oct. 2, 1991), 13-12-145 (amend. Jan. 21, 2015)), which it contends authorize the entry of a money judgment without the additional requirement of either foreclosure of the demolition lien or pursuit of a separate civil action. Apart from the fact that these provisions were never cited by the City in the trial court, Fannie Mae correctly notes that these sections (which simply mirror the Illinois Municipal Code's language regarding the City's ability to recover the cost of the demolition from "the owner or owners") contain no enforcement provisions and, therefore, in order to enforce its lien for demolition costs, the City would have to invoke the provisions of the Illinois Municipal Code. As we have concluded that nothing in the Illinois Municipal Code authorizes a municipality to satisfy its lien for demolition or repair costs without either foreclosing the lien or pursuing a separate civil action, the City's new argument fails as well.

¶ 39    Fannie Mae also asks that we determine whether a municipality may impose personal liability for demolition costs on individuals or entities that did not cause the unsafe or hazardous building conditions and who owned the property at some time prior

to demolition, but who do not own the property either when it is demolished or when the City perfects its demolition lien. We decline to resolve this issue as it is unnecessary to the resolution of this appeal. If the City elects to pursue foreclosure or a separate civil action against Fannie Mae, Fannie Mae is entitled to contest both the legal and factual basis for the City's claim against it on any grounds available.

¶ 40        Because the circuit court's judgment against Fannie Mae was based on a misapplication of the Illinois Municipal Code's enforcement procedures and because the Illinois Municipal Code does not authorize a municipality to obtain a money judgment by filing a motion in the *in rem* demolition case, we reverse the judgment of the circuit court of Cook County.

¶ 41        Reversed.