# Illinois Official Reports

## Appellate Court

---

### *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292

---

| | |
|---|---|
| Appellate Court Caption | SUBHASH MAJMUDAR, Plaintiff-Appellant, v. HOUSE OF SPICES (INDIA), INC., Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-0292 |
| Filed | November 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff was not entitled to relief under the Illinois Wage Payment and Collection Act for unpaid future compensation for the remainder of the terminated employment contract plaintiff had with defendant, since the question of whether plaintiff was terminated for cause did not fall under the Act's definition of "final compensation," and defendant did not violate the Act by failing to pay plaintiff future compensation for the remainder of the terminated contract. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-004338; the Hon. Ronald Bartkowicz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on | Matthew T. Layman, of Moran Law Group, of Chicago, for appellant. |

Appeal

David S. Baffa, of Seyfarth Shaw LLP, of Chicago, for appellee.

Panel        JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Palmer and Taylor concurred in the judgment, with opinion.

**OPINION**

¶ 1 This appeal arises out of a dispute between plaintiff Subhash Majmudar and defendant House of Spices (India), Inc., after plaintiff's employment with defendant was terminated approximately 15 months into a 5-year employment contract. On appeal, plaintiff's sole contention is that the trial court erred in finding that he was not entitled to relief pursuant to the Illinois Wage Payment and Collection Act (Act) (820 ILCS 115/1 *et seq.* (West 2006)). We affirm.

¶ 2 Plaintiff filed his original complaint on April 21, 2008, alleging a breach of contract and a claim under the Act. On May 14, 2008, he filed an amended complaint alleging a breach of contract, a claim under the Act, and two claims that were dismissed before trial. The pertinent facts according to the complaint are as follows: on August 27, 2006, plaintiff entered into a contract with Gorhandas L. Soni (G.L. Soni), the president of House of Spices for a fixed five-year term with additional benefits. The contract was reduced to a typed document the following day. According to plaintiff, he fully performed under the contract but his employment with defendant was terminated on December 12, 2007. Plaintiff claimed that defendant breached the contract and, as a result, he was entitled to the $625,309.75 in salary and benefits he stood to gain from the remainder of the contract. Plaintiff also requested relief pursuant to the Act in the form of $625,309.75 in compensatory damages, reasonable attorney fees, and the costs of suit.

¶ 3 The handwritten contract is dated August 27, 2006, titled "5 year contract," and provides:

"This is to certify that G.L. Soni & Subhash Majmudar agreed as under on 8/27/06:

(1) His Base Salary is $111,000.00

(2) Monthly car coupons will be paid by [House of Spices]

(3) A [increase] [*sic*] of $10,000.00 will be paid after 6 months

(4) Annual Bonus will be paid

(5) Yearly Salary increase will be paid"

The contract is signed by G.L. Soni and plaintiff. The typed document is substantially the same as the handwritten contract, but specifies that plaintiff was hired as a warehouse coordinator and project manager. The typed document is signed by G.L. Soni.

¶ 4    In its answer, defendant alleged various counterclaims against plaintiff including breach of contract. Defendant further alleged that plaintiff resigned from his position or, alternatively, that defendant had cause to terminate plaintiff's employment.

¶ 5    The only transcripts included from the four-day bench trial in the record on appeal are the transcripts from the parties' closing arguments. Based on these arguments, we gather the following facts. Plaintiff worked for defendant beginning in 1992 until approximately July 2006 when he accepted a job with a competitor, Kohinoor Foods. There was conflicting testimony about who initiated plaintiff's return to defendant, but there was no dispute that about one month later, in August 2006, plaintiff met with G.L. Soni at which time they signed the five-year contract. It was also undisputed that plaintiff's employment with defendant ended in November 2007. Based on these facts, the central issues at trial were whether plaintiff resigned his position with defendant, whether defendant terminated plaintiff's employment, and if defendant terminated plaintiff's employment, whether defendant had cause to do so. Plaintiff argued that his wife received a call from Soni on November 30, 2007, and was told plaintiff had been terminated, effective immediately, and that he did not need to return to work. Defendant argued that plaintiff resigned after throwing down his keys and leaving the premises on four separate occasions. In the alternative, defendant argued it terminated plaintiff for cause based on plaintiff's poor treatment of employees. The parties also disagreed as to whether plaintiff was entitled to relief under the Act.

¶ 6    The circuit court found the parties had entered into an enforceable contract, that plaintiff did not resign from his position, and that defendant did not have cause to terminate plaintiff's employment. The court concluded that plaintiff's termination violated the contract and that defendant had breached the contract. The court determined that plaintiff was only entitled to two years of his salary due to plaintiff's failure to "make an honest, good faith effort to find substitute employment," less the money plaintiff earned from interim employment, for a total of $173,000.

¶ 7    The court denied plaintiff's claim under the Act, taking the "position that the Act doesn't apply to prospective payments under the circumstances in which the termination is being contested by the employer for cause."

¶ 8    Plaintiff filed a timely posttrial motion, arguing that he was entitled to a reversal of judgment on his claim pursuant to the Act. The circuit court denied the motion.

¶ 9    The sole question on appeal is whether the Act applies to the remaining unpaid future wages pursuant to an employment contract after that contract has been terminated. Specifically, plaintiff is seeking interest on the unpaid wages and reasonable attorney fees. This is an issue of first impression and, as a question of statutory interpretation, must be reviewed *de novo*. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008).

¶ 10    "The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). The language of the statute is the best indication of the legislature's intent and therefore must be given its plain and ordinary meaning. *Id.* at 553. If the language is unambiguous, the statute must be given effect without the use of other aids of construction. *Id.* A court should not consider words and phrases in isolation, but instead should interpret each word and phrase in light of the statute as a whole.

*Id.* "Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous." *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26.

¶ 11     The purpose of the Act is to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation. *Andrews v. Kowa Printing Corp.*, 351 Ill. App. 3d 668, 675 (2004), *aff'd*, 217 Ill. 2d 101 (2005); *People ex rel. Illinois Department of Labor v. Tri State Tours, Inc.*, 342 Ill. App. 3d 842, 845 (2003); *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 59 (2001); see also *Armstrong v. Hedlund Corp.*, 316 Ill. App. 3d 1097, 1107 (2000) (the Act's purpose is "to insure the prompt and full payment of wages due workers at the time of separation from employment, either by discharge, layoff or quitting"). To establish a claim under the Act, a plaintiff must demonstrate that "wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1067 (2005). According to the statute, for an employee other than a separated employee, "wages" are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2 (West 2006). Payments to separated employees are termed "final compensation," which is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." *Id.*

¶ 12     As an initial matter, there is no dispute that plaintiff was an "employee" and defendant an "employer" under the Act. However, it is unclear whether plaintiff is arguing he is owed "wages" or "final compensation" according to the statutory definitions. In his complaint, plaintiff argued he was owed both wages and final compensation and, in his appellate brief, plaintiff defines both terms and then argues he is owed "unpaid wages." However, the record shows plaintiff is seeking relief based on final compensation. Although plaintiff argues he is owed payment for unpaid future wages pursuant to his contract, plaintiff does not argue that defendant failed to pay him anything under the contract prior to his termination. Thus, plaintiff is only looking for what he believes he was due at the termination of his contract, his final compensation as a separated employee. See *Convinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 482 (2009) (the plaintiff argued that the defendant violated the Act by "not paying [the plaintiff] his final compensation, the sums due under the employment contract, at the time of his termination").

¶ 13     Therefore, our first step in ascertaining the intent of the legislature is to understand the meaning of "final compensation." Plaintiff claims he is owed the unpaid future wages for the remainder of his terminated employment contract as final compensation because it is, per the statutory definition, "compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (West 2006). However, two key words in the definition are not defined by the statute: "compensation" and "owed." If a statute does not define a word, a dictionary may be consulted to determine the

plain and ordinary meaning of the word. *Dodaro v. Illinois Workers' Compensation Comm'n*, 403 Ill. App. 3d 538, 545 (2010).

¶ 14 Black's Law Dictionary defines "compensation" as "[r]emuneration and other benefits received in return for services rendered." Black's Law Dictionary 277 (7th ed. 1999). "Remuneration" is defined as "[p]ayment; compensation." *Id*. at 1298. The plain and ordinary meaning of the word "owe" is "to be under obligation to pay or repay in return for something received: be indebted in the sum of." Merriam-Webster's Collegiate Dictionary 831 (10th ed. 1997).

¶ 15 Applying the plain meanings to the definition of final compensation, "compensation owed" an employee by an employer necessarily requires the employer to have received something from the employee. In this case, that something was plaintiff's employment, and his compensation in exchange for his employment was governed by the contractual agreement. Once plaintiff's employment was terminated, so was the agreement, particularly because there was a question at the time of termination as to whether plaintiff was terminated for cause. Then, it necessarily follows that at the time of termination defendant owed plaintiff no further compensation pursuant to the contract as "final compensation," because defendant was no longer receiving anything in exchange for that compensation and believed it had terminated plaintiff for cause. Therefore, in these circumstances, the unpaid future wages pursuant to the terminated contract is not final compensation and cannot be recovered under the Act.

¶ 16 We believe our interpretation is supported by other provisions of the statute. The statute requires an employer to pay every employee "all wages earned during the semi-monthly pay period" at least semi-monthly. 820 ILCS 115/3 (West 2006). In addition, the statute requires that the employer pay the employee the wages earned during a pay period "not later than 13 days after the end of the pay period" during which those wages were earned. 820 ILCS 115/4 (West 2006). In the case of a separated employee, the employer must pay final compensation at the time of separation or no later than the next "regularly scheduled payday for such employee." 820 ILCS 115/5 (West 2006). An employee who was not timely paid wages or final compensation by his employer is entitled to "damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid" and "costs and all reasonable attorney's fees." 820 ILCS 115/14 (West 2010).[1]

¶ 17 Read together, the Act thus requires an employer to pay a separated employee's final compensation by the next regularly scheduled payday or not later than 13 days after the end of the last pay period. If we were to accept plaintiff's interpretation of the Act, an employer that terminates an employee's contract prior to a specified end date would be required to pay the remainder of the contract not later than 13 days after the end of the last pay period. In the

---

[1]Section 14 of the Act was amended in 2010, effective January 1, 2011. See Pub. Act 96-1407, § 10 (eff. Jan. 1, 2011). The previous version of the section did not include the quoted material. See 820 ILCS 115/14 (West 2006). However, for the purposes of this appeal, the amendment does not alter the outcome of the case.

alternative, if an employer believed either that an employee was terminated for cause or the employee breached the contract, and went to trial on those issues unsuccessfully, the employer would essentially be penalized at an interest rate of 2% for each month the employer litigated the issue, in addition to having to pay costs and attorney fees. This would create an unfair burden on employers that may have a reasonable employment dispute with separated employees and we do not believe this interpretation is in line with the purpose of the Act or the legislature's intent in creating the Act.

¶ 18        We find guidance for our interpretation of the Act from a Supreme Court of Iowa decision, *McClure v. International Livestock Improvement Services Corp.*, 369 N.W.2d 801 (Iowa 1985). See *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005) (we may receive guidance from the decisions of other jurisdictions as persuasive authority). In *McClure*, the plaintiff was employed by the defendant "at a beginning salary of $2500 monthly plus expenses." *McClure*, 369 N.W.2d at 802. The contract contained a clause that required the parties " 'not give less than 30 days advance written notice of termination' " of the agreement. *Id*. The plaintiff began work in October 1982, but his employment was severed by the defendant on November 1, 1982. *Id*. The plaintiff filed an action under the Iowa Wage Payment Collection Law (Iowa Wage Law) (Iowa Code ch. 91A (1983)), alleging that his termination triggered the notice provision in the contract, and that he was therefore entitled to $2,500 for November and attorney fees. *McClure*, 369 N.W.2d at 802-03. Under the Iowa Wage Law, "wages" are defined as:

> "[C]ompensation owed by an employer for:
>
>    a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.
>
>    b. Vacation, holiday, sick leave, and severance payments which are due an employee under an agreement with the employer or under a policy of the employer." Iowa Code § 91A.2(4) (1983).

In considering whether the plaintiff could recover under the Act, the Supreme Court of Iowa observed:

> "A case may be supposed in which wages for the thirty-day period in the present contract would come under the [Iowa] Wage Law. If relations between [the defendant] and [the plaintiff] had been good, if [the defendant] had given [the plaintiff] the thirty-day notice because of a business fall-off, if [the plaintiff] had continued to work for thirty days, and if [the defendant] had not paid the salary for the thirty days, the [Iowa] Wage Law would have applied.
>
>    We do not have such a case. Under the fact findings of the trial court, we have instead a common law claim by [the plaintiff] for $2500 for an alleged breach of contract: terminating the employment immediately contrary to the thirty-day clause. In this case the claim for $2500 is not for services 'rendered' but for damages." *McClure*, 369 N.W.2d at 804.

Similarly here, we do not have a case where defendant owed plaintiff any additional final compensation under the Act pursuant to the terminated employment contract. Instead, we have

a common law claim by plaintiff for a breach of contract, based on defendant terminating plaintiff's employment without cause before the five-year period of employment was over, which plaintiff successfully litigated at trial.

¶ 19    Citing *Anderson v. Illinois Bell Telephone Co.*, 961 F. Supp. 1208 (N.D. Ill. 1997), plaintiff argues that the legislature's 1984 elimination of the phrase "compensation for labor or services rendered" from the definition of "wages" shows that the legislature intended to use the Act as "a vehicle to enforce employment agreements." In *Anderson*, the plaintiff brought an action which included a claim against the defendant for failing to pay her wages from December 1, 1993, through June 28, 1994, at which time she was still employed by the defendant. *Anderson*, 961 F. Supp. at 1216. She claimed this failure to pay violated her oral contract with the defendant and also violated the Act. *Id*. The defendant argued the plaintiff was not entitled to those wages because she did not perform any work during that time period. *Id*. at 1217. The district court, however, disagreed and stated that "[a] careful reading of the [Act] shows *** that nothing in it limits its reach to comport with [the defendant's] interpretation." *Id*. The court also noted the 1984 change in the definition of "wages" that eliminated the phrase "compensation for labor or services rendered." (Internal quotation marks omitted.) *Id*.

¶ 20    First, we note that *Anderson* is a federal court case, and although we may receive guidance from decisions of other jurisdictions as persuasive authority, we are not bound to follow them. *Kostal*, 357 Ill. App. 3d at 395. In addition, *Anderson* is distinguishable from the present case. The plaintiff in *Anderson* was seeking to recover unpaid wages for a time period during which she was still employed pursuant to an oral contract, although she was performing no labor or services for the defendant. *Anderson*, 961 F. Supp. at 1211, 1216. In contrast, in the instant case plaintiff is attempting to recover the "unpaid wages" from the remainder of his contract *after* he was terminated by defendant. *Anderson* therefore offers no support for plaintiff's argument that he is entitled to relief under the Act for his unpaid future wages pursuant to the terminated employment contract.

¶ 21    We acknowledge that the legislature changed the definition of "wages" in 1984 from "compensation for labor or services rendered" to "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." See Pub. Act 83-198, § 1 (eff. Jan. 1, 1984). In addition, the legislature added essentially the same phrase, "and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties," to the definition of "final compensation." *Id*. The legislative history shows that the changes were introduced to clarify that the Act applies "to verbal agreements to pay wages as well as written employment contracts." 83d Ill. Gen. Assem., House Proceedings, Apr. 21, 1983, at 43 (statements of Representative Ronan). The legislative history, however, gives no indication that the broadened definitions were intended to include unpaid future wages pursuant to a terminated employment contract.

¶ 22    The other cases cited by plaintiff in support of his argument are factually distinguishable and therefore offer no guidance. See *Catania v. Local 4250/5050*, 359 Ill. App. 3d 718 (2005); *Houghtby v. Box*, No. 01 C 50401, 2002 WL 992655 (N.D. Ill. May 14, 2002); *Shields v. Associated Volume Buyers, Inc.*, No. 93 C 7620, 1994 WL 110397 (N.D. Ill. Mar. 31, 1994).

- 7 -

¶ 23	The plaintiff in *Catania* was employed by Local 4250, a division of the Communication Workers of America Union, which represented AT&T employees, and received benefits as union members received pursuant to a collective bargaining agreement between Local 4250 and AT&T. *Catania*, 359 Ill. App. 3d at 720. Eventually, the plaintiff's employment was terminated and she filed a complaint against Local 4250 and the president of Local 4250 (collectively, the defendants) claiming, in pertinent part, that Local 4250 violated the Act by failing to pay "final compensation" and that the president of Local 4250 was individually liable for the final compensation owed to the plaintiff because he knowingly permitted Local 4250 to violate the Act. *Id*. at 720-21. After a jury trial, the plaintiff was awarded $81,000 on each claim under the Act, and eventually the trial court also awarded plaintiff attorney fees and costs. *Id*. at 721. On appeal, the defendants argued the matter should be remanded for a bench trial because the Act confers no right to a jury trial. *Id*. The reviewing court began its analysis by considering whether an action brought under the Act constituted a "special or statutory [proceeding] unknown to the common law." (Internal quotation marks omitted.) *Id*. at 722. The court noted that, under the Act, a separated employee is entitled to "much more than contractual wages" including, "earned commissions, earned bonuses, the monetary equivalent of earned vacation and earned holidays, and 'any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties.' " *Id*. at 725 (quoting 820 ILCS 115/2 (West 1998)). Based on this and other considerations, the court concluded that there was no right to a jury trial for actions filed pursuant to the Act. *Id*.

¶ 24	Although the *Catania* court stated that a separated employee is entitled to "much more than contractual wages," the court was not deciding whether unpaid wages pursuant to the remainder of a terminated employment contract fell under the definition of "final compensation." The question at the center of *Catania*, whether there was a right to a jury trial for actions filed pursuant to the Act, is not a question in the present case, so we find *Catania* to be inapposite. In addition, the *Catania* court did not expand on what it meant by "much more than contractual wages" beyond listing what is already included in the statutory definition of "final compensation" so we find no additional guidance from its discussion of final compensation. *Catania*, 359 Ill. App. 3d at 725.

¶ 25	In *Houghtby*, the district court granted the defendant's motion to dismiss the plaintiff's claim under the Act because the plaintiff did not have a contractual agreement with the defendant entitling her to wages after a certain date. *Houghtby*, 2002 WL 992655, at *1-2. Here, there is no question that plaintiff and defendant had a valid employment contract so *Houghtby* is inapplicable to the present case.

¶ 26	*Shields* is similarly inapplicable to our present analysis. There, the plaintiff entered into a three-year employment contract with the defendant, ending on December 31, 1994. *Shields*, 1994 WL 110397, at *1. The plaintiff was terminated on April 23, 1993, with 87 weeks remaining on his contract. *Id*. He filed suit seeking payment of the wages owed on the remainder of his contract, and the defendant filed a motion for summary judgment. *Id*. In considering the defendant's motion, the district court found only that there was "at least a question of fact whether plaintiff's wages due and owing under his contract constitute[d] wages or final compensation under the Act." *Id*. at *2. We recognize that the plaintiff in *Shields*

was making the same claim as plaintiff in the present case; however, the court's conclusion that there was "at least a question of fact" as to whether plaintiff could recover the remainder of his wages under the terminated employment contract is hardly a determinative interpretation of the statute, and we find no guidance from the case.

¶ 27    To the extent that *Anderson* and *Shields* suggest that a plaintiff can recover future unpaid wages remaining on a terminated contract under the Act, we are not bound by the decisions of federal courts and we decline to follow them. See *Kostal*, 357 Ill. App. 3d at 395.

¶ 28    Plaintiff nonetheless insists that because the circuit court found that he was terminated without cause in violation of his employment contract and awarded him damages of $173,000 in lost wages, he has shown that the defendant violated the employment contract by denying him some portion of his final compensation. However, the court found that defendant violated the employment contract because defendant terminated plaintiff's employment without cause, not because defendant denied plaintiff some portion of his final compensation. What plaintiff is actually seeking, and actually received, is damages for a breach of the employment contract.

¶ 29    After oral arguments in this case, plaintiff filed a motion to cite additional authority, *Elsener v. Brown*, 2013 IL App (2d) 120209, a recent case from the Second District, which we have allowed. Similar to the present case, in *Elsener* the plaintiff had signed a three-year employment contract with the Brown Business Ledger, LLC (BBL), and was terminated only 14 months into the contract. *Elsener*, 2013 IL App (2d) 120209, ¶¶ 8, 12. The contract provided that the plaintiff's base salary was $85,000 per year and was to be paid in biweekly installments. *Id.* ¶ 8. However, in contrast to the present case, the plaintiff's contract in *Elsener* also provided that the plaintiff would be entitled to a severance upon involuntary termination, a distinguishing fact that plaintiff neglected to address in his motion. *Id.* Specifically with respect to "severance," the contract stated, "[e]mployee shall be entitled to the remaining amount of his base salary [$85,000] through expiration of the Contract Term if he is terminated not for cause." *Id.* The trial court found that the defendant, as an officer or agent of BBL, was individually liable to plaintiff for BBL's violation of the Act. *Id.* ¶¶ 1, 28. Significantly, the defendant in *Elsener* never disputed that the plaintiff was entitled to his severance payment under the employment contract but, rather, disputed the trial court's finding that he was individually liable for the severance payment. *Id.* ¶¶ 51, 66-67. Ultimately, the Second District affirmed the judgment of the trial court. *Id.* ¶ 1. However, because *Elsener* is factually distinguishable from the present case and because the issue before the Second District was different than the issue before us, we find the holding in *Elsener* to be inapplicable to the present case.

¶ 30    Under our interpretation of the plain language of the Act, unpaid future compensation for the remainder of a terminated contract where there is a question as to whether the employee was terminated for cause does not fall under the Act's definition of "final compensation." Therefore, under the present circumstances, defendant did not violate the Act when it did not pay plaintiff the unpaid future compensation for the remainder of plaintiff's terminated contract. Plaintiff has put forth no other basis to claim defendant violated the Act and, therefore, plaintiff is not entitled to relief under the Act.

¶ 31     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 32     Affirmed.