2016 IL App (1st) 142563

THIRD DIVISION
January 13, 2016

No. 1-14-2563

| | | |
|---|---|---|
| WING STREET OF ARLINGTON HEIGHTS CONDOMINIUM ASSOCIATION, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 13 M3 3566 |
| | ) | |
| KISS THE CHEF HOLDINGS, LLC, | ) ) | Honorable Sandra Tristano Judge Presiding |
| Defendant-Appellee | ) ) ) | |
| (All Unknown Occupants, | ) ) | |
| Defendants). | ) | |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal involves an issue of first impression regarding a condominium purchaser's liability pursuant to section 9(g)(4) of the Illinois Condominium Property Act (Act) (765 ILCS 605/9(g)(4) (West 2012)) for the payment of six months of past due assessments incurred by the previous owner, whose interest in the property was foreclosed. The issue presented is whether a wholly owned subsidiary of a mortgagee that purchases the property at the foreclosure sale is considered a "mortgagee" under the Act so that a third party who later purchases the condominium from the subsidiary becomes liable for the payment of six months delinquent assessments under section 9(g)(4).

¶ 2      After a trial on the condominium association's action to foreclose its lien on the condominium unit, the circuit court originally ruled in favor of the association, but later reconsidered and determined that the third-party purchaser was not liable for any past due assessments. We disagree and reverse.

¶ 3                                    BACKGROUND

¶ 4      The condominium involved is property commonly known as 171 West Wing Street, Unit 203, in Arlington Heights, Illinois. RealWorks, LLC, the unit's former owner, defaulted both in the payment of monthly assessments to plaintiff-appellant, Wing Street of Arlington Heights Condominium Association and mortgage payments due to its lender, Village Bank & Trust. In 2010, the association filed an action to collect past due assessments and an order for possession and judgment was entered against RealWorks on April 19, 2011.

¶ 5      Also in 2011, Village Bank filed proceedings to foreclose the mortgage on the property. After a judgment for foreclosure and sale was entered in that case, the property was sold at a judicial sale. The purchaser at the sale was VBT Wing Street Condo, LLC (VBT), a wholly owned subsidiary of Village Bank.

¶ 6      Commencing in January 2012, VBT began paying current assessments due on the unit and continued to do so until the property was later sold to defendant-appellee, Kiss The Chef Holdings, LLC on March 29, 2013. During this period of time, VBT did not pay any portion of the past due assessments incurred prior to the foreclosure.

¶ 7      The sale to Kiss The Chef was accomplished via a quitclaim deed. Neither VBT nor Kiss The Chef requested or obtained a paid assessment letter from the association prior to the sale.

¶ 8    On December 3, 2013, the association commenced this action against Kiss The Chef asserting its lien on the unit for six months of past due assessments incurred by RealWorks when RealWorks owned the unit. After a bench trial, the circuit court originally ruled in favor of the association, finding that VBT was, for purposes of the Act, a "mortgagee" and that Kiss The Chef's purchase of the unit from VBT rendered Kiss The Chef liable for the statutory remedy under section 9(g)(4). Based on this finding, the court entered judgment in favor of the association in the amount of $4,245.80, plus $1,142 in attorney fees and $583.60 in costs.

¶ 9    Kiss The Chef moved for reconsideration, arguing first that VBT was the mortgagee and that VBT's payment of monthly assessments following the foreclosure sale extinguished the association's lien for unpaid assessments prior to the sale.   Kiss The Chef maintained that the extinguishment of the association's lien for delinquent assessments absolved it of any obligation to pay any portion of that delinquency. Kiss The Chef also argued alternatively that if VBT was not a mortgagee, VBT, as the purchaser at the foreclosure sale, was the party liable for the statutory remedy and because the association had not recorded any lien arising from VBT's nonpayment of six months of past due assessments following the judicial sale, the lien did not survive the sale from VBT to Kiss The Chef.

¶ 10    The circuit court granted VBT's motion for reconsideration and concluded that VBT was not a mortgagee for purposes of imposing liability on Kiss The Chef under section 9(g)(4). The association's motion for reconsideration of the court's ruling was denied and the association timely appealed.

¶ 11                              ANALYSIS

¶ 12   The issue presented involves construction of various provisions of the Act as they apply to the undisputed facts of this case. "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature." *1010 Lake Shore Association v. Deutsche Bank National Trust Co.,* 2015 IL 118372, ¶ 21; *Nelson v. Artley,* 2015 IL 118058, ¶ 24. "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *1010 Lake Shore,* 2015 IL 118372, ¶ 21 (citing *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010)); see also *In re Marriage of Turk,* 2014 IL 116730, ¶ 15. "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." (Internal quotation marks omitted.)   *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010); see also *Turk,* 2014 IL 116730, ¶ 15.   A court should not consider words and phrases in isolation, but instead should interpret each word and phrase in light of the statute as a whole.   *JPMorgan Chase Bank*, 238 Ill. 2d at 461. "Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous." *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26; see also *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292, ¶ 10.

¶ 13   Although Kiss The Chef contends that an abuse of discretion standard of review applies to the circuit court's decision to grant its motion for reconsideration, we agree with the association that because the underlying issue involves the proper construction of the Act, which presents a question of law, *de novo* review is appropriate. *1010 Lake Shore*, 2015 IL 118372, ¶ 21 ("Questions of statutory construction are *** reviewed *de novo*.").

¶ 14   Several of the Act's provisions bear on the issue presented. Specifically, section 9(g)(1) of

the Act creates a statutory lien on a condominium unit for the unit owner's failure or refusal "to make any payment of the common expenses." 765 ILCS 605/9(g)(1) (West 2012). "Common expenses" are defined under the Act to include "the proposed or actual expenses affecting the property, including reserves, if any, lawfully assessed by the Board of Managers" of the condominium association. 765 ILCS 605/2(m) (West 2012). Under section 9(g)(1), the lien for unpaid assessments is "prior to all other liens and encumbrances, recorded or unrecorded," with exceptions not relevant here. 765 ILCS 605/9(g)(1) (West 2012). "The plain language of section 9(g)(1) *** creates a lien in favor of a condominium association upon the failure or refusal of a unit owner to pay common expense assessments." *1010 Lake Shore*, 2015 IL 118372, ¶ 23.

¶ 15     The Act also governs the liability of purchasers of a condominium unit at a foreclosure sale:

"The purchaser of a condominium unit at a judicial foreclosure sale, or a mortgagee who receives title to a unit by deed in lieu of foreclosure or judgment by common law strict foreclosure or otherwise takes possession pursuant to court order under the Illinois Mortgage Foreclosure Law, shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale ***. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court, a deed in lieu thereof has been accepted by the lender, or a consent judgment has been entered by the court." 765 ILCS

605/9(g)(3) (West 2012).

Finally, the Act creates a remedy in favor of a condominium association where a third party either purchases the unit at the foreclosure sale or later purchases the unit from the mortgagee. Specifically, section 9(g)(4) provides:

> "The purchaser of a condominium unit at a judicial foreclosure sale, other than a mortgagee, who takes possession of a condominium unit pursuant to a court order or a purchaser who acquires title from a mortgagee shall have the duty to pay the proportionate share, if any, of the common expenses for the unit which would have become due in the absence of any assessment acceleration during the 6 months immediately preceding institution of an action to enforce the collection of assessments, and which remain unpaid by the owner during whose possession the assessments accrued." 765 ILCS 605/9(g)(4) (West 2012).

¶ 16    Thus, the Act imposes an obligation on any purchaser at a foreclosure sale, including a mortgagee, to pay current assessments beginning the first month after the judicial sale. Under subsection (3), the purchaser's payment of assessments coming due following the sale serves to extinguish the association's statutory lien under subsections (1) and (2) of section 9(g) for unpaid assessments incurred prior to the sale. The Act further imposes an additional obligation on a purchaser, other than a mortgagee, who purchases the unit, either at the foreclosure sale or later from the mortgagee, *i.e.*, that party must pay under subsection (4) of section 9(g), an amount equal to the assessments that were delinquent for the six months preceding an association's action to collect the unpaid assessments. As relevant here, nothing in the language of the Act supports the

conclusion that a third-party purchaser can discharge its obligation under subsection (4) by paying current assessments under subsection (3) following the sale.

¶ 17    Our supreme court recently addressed the operation of section 9(g) in *1010 Lake Shore.* There the court considered whether an association's lien for unpaid assessments was extinguished by virtue of a judgment of foreclosure entered on the condominium unit, notwithstanding the fact that the purchaser at the judicial sale did not pay assessments beginning the first month following the sale as required under section 9(g)(3). In *1010 Lake Shore*, a mortgagee-bank purchased the unit at a foreclosure sale, but failed to pay assessments that accrued following the sale. *1010 Lake Shore,* 2015 IL 118372, ¶ 3. The association later sought to collect not only the assessments accruing since the date of the sale, but also those that accrued prior to the sale. *Id.* ¶ 4.

¶ 18    The mortgagee maintained that the association's lien was extinguished, like other liens on the property, by virtue of the judgment of foreclosure. Thus, the mortgagee contended that, notwithstanding its liability for postsale assessments, it could not be held liable for delinquent presale assessments incurred by the prior owner. *Id.* ¶ 7.

¶ 19    The court disagreed, finding that the Act's provisions conditioned the extinguishment of the association's lien for presale assessments on the foreclosure purchaser's payment of assessments due following the sale.  The court focused on the language of section 9(g)(3) providing that the purchaser's payment of postsale assessments "confirms the extinguishment" of an association's presale lien. Resorting to the dictionary definitions of "confirm" ("'[t]o give formal approval to'" or "'[t]o verify or corroborate'" (*id.* ¶ 24 (quoting Black's Law Dictionary 318 (8th ed. 2004))) and "extinguishment" ("'[t]he cessation or cancellation of some right or interest'" *id.*

(quoting Black's Law Dictionary 623 (8th ed. 2004))), the court held that under the plain language of section 9(g)(3), "the payment of postforeclosure sale assessments formally approves and makes certain the cancellation of the condominium association's lien" (*id.*). The court further determined that by requiring the foreclosure sale purchaser to confirm the extinguishment of the lien, the Act "plainly mandates an additional step beyond the extinguishment of the lien in a foreclosure action." *Id.* ¶ 25. The court found, therefore, that the mortgagee's failure to confirm the extinguishment of the association's lien by paying postforeclosure sale assessments rendered it liable for the entirety of the association's lien, including the presale delinquency. *Id.* ¶ 33.

¶ 20     The court also addressed the mortgagee's argument that by providing for an association's limited right of recovery of presale assessments in section 9(g)(4) and exempting mortgagees from that statutory remedy, the legislature manifested its intent that purchasers at foreclosure sales should not be liable for all unpaid assessments accruing prior to the foreclosure sale. *Id.* ¶ 28. Rejecting this categorical limitation, the court found that while section 9(g)(3) protects all judicial sale purchasers, including mortgagees, who pay current assessments following a judicial sale from liability for past due assessments, the purpose of subsection (g)(4) was to allow associations to recover a portion of the prior owner's unpaid assessments from a new third-party owner. *Id.* ¶ 32. The court further determined that because a mortgagee can protect itself from liability for all past delinquencies by, among others things, paying current assessments following its acquisition of the unit, subsection (g)(4) posed no impediment to requiring the mortgagee to pay the entirety of past assessments when it failed to "confirm the extinguishment" of the association's lien by satisfying its obligation to pay current assessments under subsection (g)(3). (Internal quotation marks

omitted.) *Id.* ¶ 34.

¶ 21 The reasoning of *1010 Lake Shore* leads us to conclude that the trial court erred as a matter of law in concluding that Kiss The Chef was not liable under section 9(g)(4) for past due assessments accruing during the six months preceding commencement of the association's action against RealWorks to enforce its lien. We agree with the association's argument that VBT is, for purposes of the Act, a "mortgagee." As the association notes, its position is supported by the Illinois Mortgage Foreclosure Law, which defines a "mortgagee" as "(i) the holder of an indebtedness or obligee on a non–monetary obligation secured by a mortgage or any *person designated or authorized to act on behalf of such holder* and (ii) any person claiming through a mortgagee as successor." (Emphasis added.) 735 ILCS 5/15-1208 (West 2012). We see no reason to depart from this definition in the context of this case. See *1010 Lake Shore,* 2015 IL 118372, ¶ 37 ("[W]e presume that the legislature intended the Act and the Foreclosure Law to be consistent and harmonious."). There is no dispute that VBT, as Village Bank's wholly owned subsidiary, was acting on the bank's behalf in bidding at the judicial sale and there is no evidence in the record to support a contrary conclusion. Indeed, in its motion for reconsideration, Kiss The Chef argued that Village Bank purchased the unit at the foreclosure sale "through VBT." Thus, VBT was a mortgagee for purposes of the Act.

¶ 22 Further, because VBT was a mortgagee under the Act, its obligation under section 9(g)(3) was to pay assessments commencing in the first month following the foreclosure sale, which, as far as the record reflects, it did. Thus, VBT, under the reasoning of *1010 Lake Shore*, confirmed the extinguishment of the association's lien for past due assessments and, as a mortgagee, was exempt

from liability for the statutory remedy under subsection (g)(4). On this latter point, there is no evidence in the record that following VBT's acquisition of the unit, the association demanded payment of the statutory remedy under section 9(g)(4) from VBT, thus indicating that neither the association nor VBT believed that VBT qualified as a third-party purchaser of the unit.

¶ 23     VBT's status as a mortgagee also dictates that under the unambiguous provisions of section 9(g)(4), Kiss The Chef, as the purchaser of the property from the mortgagee, was obligated to pay an amount equal to the assessments incurred by the prior owner during the six months preceding the association's action to enforce its lien. In this context, it is important to note that the Act imposes this statutory remedy directly on the new owner. In other words, an association's effort to collect amounts due under section 9(g)(4) is not an attempt to impose unlimited liability for past due assessments on the new owner or to resurrect a lien extinguished under section 9(g)(3). Rather, the Act gives the association the right to enforce payment from the new owner whose obligation to make the payment does not arise until the property is purchased from a mortgagee. Thus, Kiss The Chef's failure to pay the statutory remedy following its purchase from VBT gave rise to a lien in favor of the association, which the association was entitled to enforce via a direct suit against Kiss The Chef.

¶ 24     This result is consistent with the plain and unambiguous language of the Act. As section 9(g)(3) states, the payment of current assessments following a judicial sale, whether by a mortgagee or a third party purchaser, serves to extinguish the statutory lien in favor of the association for past due assessments "pursuant to paragraph (1) or (2) of this subsection (g)." 765 ILCS 605/9(g)(3) (West 2012). Here, the association's statutory lien for delinquent assessments

incurred by RealWorks was extinguished following the judicial sale when VBT began paying current assessments. But as the *1010 Lake Shore* court recognized, section 9(g)(4) imposes an independent obligation on third party purchasers and once that obligation is breached, a separate statutory lien under subsection (g)(4) arises in favor of the association based not on the prior owner's delinquency, but on the current owner's failure to make the payment required by the Act. Because nothing in the Act's language supports the conclusion that payment of postsale assessments has any effect on a third-party purchaser's obligation under section 9(g)(4), the association properly sought the statutory remedy from Kiss The Chef.

¶ 25     Because we conclude that as the purchaser of a foreclosed condominium from a mortgagee, Kiss The Chef was obligated to pay the statutory remedy under section 9(g)(4) of the Act, we need not reach the alternative arguments advanced by the association in support of its right to recover that sum.

¶ 26                                          CONCLUSION

¶ 27     For the foregoing reasons, the judgment of the circuit court of Cook County in favor of Kiss The Chef and against Wing Street Condominium Association is reversed and this case is remanded with directions to enter judgment in favor of Wing Street Condominium Association and against Kiss The Chef in the amount of the statutory remedy under section 9(g)(4), plus costs and attorney fees.

¶ 28     Reversed.