# Illinois Official Reports

## Appellate Court

---

**Sylva, LLC v. Baldwin Court Condominium Ass'n, 2018 IL App (1st) 170520**

---

| | |
|---|---|
| Appellate Court Caption | SYLVA, LLC, Plaintiff-Appellee, v. BALDWIN COURT CONDOMINIUM ASSOCIATION, INC., Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-17-0520 |
| Filed | June 4, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-M1-127817; the Hon. Diana Rosario, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Richard D. Grossman, of Law Offices of Richard D. Grossman, of Chicago, for appellant.<br><br>John F. Cloutier, of Cloutier Law Group, of Chicago, for appellee. |
| Panel | JUSTICE GRIFFIN delivered the judgment of the court, with opinion. Presiding Justice Pierce and Justice Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, Sylva, LLC (Sylva), bought a condominium unit at a judicial foreclosure sale. Defendant, Baldwin Court Condominium Association, Inc. (Baldwin Court), demanded that Sylva pay assessments that accrued during the prior owner's ownership of the condominium. The Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2012)) imposes a duty on a foreclosure buyer to pay up to six months of assessments unpaid by the prior owner. *Id.* § 9(g)(4). In the trial court, Sylva argued that it was not required to pay the assessments that accrued during its predecessor's ownership because the Condominium Property Act requires the association to sue the predecessor owner for the assessments. The trial court agreed and held that Sylva was not liable for the back assessments. We hold that the Condominium Property Act does not require a condominium association to file suit against the prior owner in order to collect unpaid assessments from the foreclosure buyer. Therefore, we reverse, and we remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3        Plaintiff, Sylva, purchased a condominium unit at a foreclosure sale in August 2014. Defendant, Baldwin Court, demanded that Sylva pay six months of the assessments incurred but not paid by the previous owner. Sylva paid the requested assessments under protest so that it could get a letter indicating that there were no liens on the property. Sylva filed this case to recover the amount that it claims it was wrongfully required to pay.

¶ 4        The trial court granted summary judgment in favor of Sylva, finding that the statute at issue required Baldwin Court to have filed suit against the previous owner in order to collect the back assessments from Sylva. The Condominium Property Act has a provision that allows condominium associations to collect up to six months of a prior owner's unpaid assessments from a foreclosure buyer.

> "The purchaser of a condominium unit at a judicial foreclosure sale, other than a mortgagee, who takes possession of a condominium unit pursuant to a court order or a purchaser who acquires title from a mortgagee shall have the duty to pay the proportionate share, if any, of the common expenses for the unit which would have become due in the absence of any assessment acceleration during the 6 months immediately preceding institution of an action to enforce the collection of assessments, and which remain unpaid by the owner during whose possession the assessments accrued." *Id.*

The trial court held that the "Association was not allowed to collect under 765 ILCS 605/9(g)(4) because no action to collect was filed against the former owner."

¶ 5        On appeal, the only issue is whether Baldwin Court did what was necessary to entitle it to up to six months of unpaid assessments from Sylva. In their briefs, the parties' singular focus is on the inclusion of the phrase, "institution of an action to enforce the collection of assessments." The parties dispute whether the statute requires that a lawsuit to collect the assessments be filed against the prior owner as a prerequisite for recovering them from a foreclosure buyer.

¶ 6        Baldwin Court points out that it took the necessary action to recover under the statute. It filed a lien against the property, and the lien was recorded. Sylva had notice of lien and of the

unpaid assessments and went forward with the purchase. As the main support for its argument, Baldwin Court cites the dictionary definitions of "institution" and "action" to conclude that instituting an action does not have to mean filing a lawsuit.

¶ 7    On the other side, Sylva relies on a number of instances in case law where "instituting an action" has been understood to mean filing a lawsuit. Sylva also relies heavily on the synopses of section 9(g)(4) to support its position that filing a lawsuit against the predecessor owner is a prerequisite to recovering back assessments under the statute.

¶ 8                                           ANALYSIS

¶ 9    The question on appeal is whether section 9(g)(4) of the Condominium Property Act requires that a foreclosure purchaser pay up to six months of unpaid assessments incurred by the previous owner if the condominium association does not file a lawsuit to collect the unpaid assessments against the prior owner. The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 22. We review a trial court's interpretation of a statute *de novo*. *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 25.

¶ 10   To paraphrase, section 9(g)(4) states that the purchaser of a condominium unit at a judicial foreclosure sale has the duty to pay the unpaid common expenses for the unit during the 6 months immediately preceding *the institution of an action* to enforce the collection of assessments. 765 ILCS 605/9(g)(4) (West 2012). Baldwin Court never filed suit to enforce the collection of assessments against the previous owner. Baldwin Court nonetheless maintains that it is still entitled to collect back assessments under the statute because it did take action to collect—it filed a lien claim and sent notice to the prior unit owner.

¶ 11   In other cases, Illinois courts have discussed section 9(g)(4) but have never directly interpreted the phrase "institution of an action." The purpose of section 9(g)(4) is to allow associations to recover a portion of the prior owner's unpaid assessments from a new third-party owner. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 32. Illinois is one of a growing number of states to grant condominium associations previously unavailable remedies for collecting assessments that became due during the time a defaulting owner held title. See Andrea J. Boyack, *Community Collateral Damage: A Question of Priorities*, 43 Loy. U. Chi. L.J. 53, 100-01 (2011) (discussing the state statutes on association lien priority for condominium foreclosures).

¶ 12   Although Baldwin Court does not cite any authority that addresses section 9(g)(4), we have held that a condominium association can recover unpaid assessments for the six months preceding the association's action to "enforce its lien." *Wing Street of Arlington Heights Condominium Ass'n v. Kiss The Chef Holdings, LLC*, 2016 IL App (1st) 142563, ¶¶ 21, 23. In *Wing Street*, however, it was clear that the condominium association "filed an action to collect past due assessments" against the unit's former owner and got a judgment and an order of possession. *Id.* ¶ 4. So the question before us here goes beyond our analysis in *Wing Street*, but the reasoning applied in that case supports our decision here—that the statute does not require a condominium association to file suit against the prior owner to be entitled to collect unpaid assessments from the new owner under the statute.

¶ 13   In *Wing Street*, we stated that section 9(g)(4) creates an independent claim for the association directly against the new owner and that the obligation arises at the time of the foreclosure purchase. *Id.* ¶ 23. We held that the statute imposes an independent obligation on

third-party purchasers and, once that obligation is breached, a separate statutory lien under section 9(g)(4) arises in favor of the association. *Id.* ¶ 24. That separate statutory lien, we explained, is based not on the prior owner's delinquency, but on the current owner's failure to make the payment required by the Condominium Property Act. *Id.* There is no reasoned basis for requiring the association to file suit against the prior owner as a condition precedent to recovering under section 9(g)(4), where the section 9(g)(4) obligation is between the association and the new owner and only arises postforeclosure.

¶ 14    One of the reasons that the statute works as a matter of policy is because a foreclosure buyer is given notice of the unpaid assessments and that it will have the duty to pay them before making the decision to buy the condominium. See 765 ILCS 605/9(g)(5) (West 2012). The General Assembly made a policy decision that rather than requiring that the condominium association (or, really, the other unit owners who are current in paying their assessments) bear the full burden of a nonpaying owner, the foreclosure buyer, who may be buying at a premium and has advance notice of the unpaid assessments, would take on that burden. See, *e.g.*, 94th Ill. Gen. Assem., House Proceedings, Apr. 11, 2006, at 30-39; see also *Country Club Estates Condominium Ass'n v. Bayview Loan Servicing LLC*, 2017 IL App (1st) 162459, ¶ 15. Here, Sylva was forewarned of the outstanding assessments and the statutory obligation to pay up to six months of the prior owner's unpaid assessments and nonetheless chose to move forward with its purchase of the property.

¶ 15    Section 9(g)(4) states that a foreclosure buyer has a duty to pay common expenses that would have come due during the six months preceding the institution of an action to enforce collection. It is the foreclosure buyer's obligation to pay the assessments by operation of statute. *Wing Street*, 2016 IL App (1st) 142563, ¶ 24. Section 9(g)(4) says nothing of instituting that action against the previous owner. Condominium associations are entitled to six months of back assessments from the time they institute an action to collect against the *foreclosure buyer*. That obligation is enforced by a direct suit against the foreclosure buyer. *Id.* ¶ 23. No suit against the previous owner is contemplated in the statute or in any case law interpreting it. Once the association files an action to collect directly against the foreclosure buyer, it is entitled to the assessments that would have become due in the preceding six months.

¶ 16    The parties do not put a strong emphasis on whether section 9(g)(4) might be ambiguous. If the language used in a statute is susceptible to more than one equally reasonable interpretation, it is ambiguous, making construction of the language necessary and permitting resort to other aids of construction to determine legislative intent. *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 25. A fair argument can be made that there is ambiguity in the statute, and there is significant extrinsic support for Baldwin Court's position.

¶ 17    One commentator anticipated that there would be confusion in this area and presciently observed that there was room for interpretive disagreement over what it means to "institute an action." See Joseph R. Fortunato, *Unpaid Condominium Assessments—Who's on the Hook? Under What Circumstances and to What Extent Are Purchasers of a Condominium Unit at a Foreclosure Sale or From a Mortgagee Liable to an Association for Unpaid Assessments? The Condominium Property Act Is a Model of Ambiguity*, 99 Ill. B.J. 208 (2011). Referring to this statute as "a model of ambiguity," the commentator goes on to set up the exact issue presented in this case with regard to what it means to "institute an action." "Buyers' counsel have argued

that nothing short of a legal proceeding—e.g., a collection suit or a suit in Forcible Entry and Detainer—constitutes the 'institution of an action' that entitles the association to collect. Associations contend that a demand letter to the defaulting prior owner is sufficient." *Id.*

¶ 18    Were we to resort to extrinsic interpretive aids, we would see strong indications that the purpose for and the goals to be attained by the statute support Baldwin Court's position. Sylva provides no reasoned argument why the association's statutory right to back assessments should be conditioned on suing the prior owner. Such a requirement would create needless litigation and would not be helpful in solving the issue that section 9(g)(4) was enacted to address. Where Sylva had record notice of the lien and this statute was in effect, it is difficult to see what justification there would be for requiring Baldwin Court to file suit against the prior owner as a condition precedent to recovering from Sylva. A commonsense approach to effectuating the goals of the statute causes us to find that a condominium association need not file a lawsuit against a prior owner to collect unpaid assessments from a foreclosure purchaser.

¶ 19    The legislative debates also provide support for the position that filing a lawsuit against the prior owner was not intended to be a precondition for recovery under the statute. For example, during the April 11, 2006, House of Representative debates, the sponsor of the bill, Representative Nekritz, was questioned about the state of the condominium law before the statute was amended and section 9(g)(4) was added. She indicated that, in contrast with the then-current law, Public Act 94-1049 (eff. Jan. 1, 2007), would allow condominium associations to collect six months of back assessments "even if they had not filed that lien against the property." 94th Ill. Gen. Assem., House Proceedings, April 11, 2006, at 33 (statements of Representative Nekritz). That position is in accord with the other states that have this type of statute on the books. See, *e.g.*, Boyack, *supra*, at 100-01 (discussing the state statutes on association lien priority for condominium foreclosures).

¶ 20    Representative Nekritz continued by stating that the then-current law provided that, "[i]f the condominium association had gone to the expense and the trouble to hire lawyers and file a claim for unpaid assessments, they…they might possibly be in a position to collect those, but there'd be no guarantee of that." 94th Ill. Gen. Assem., House Proceedings, April 11, 2006, at 34. Representative Nekritz reiterated that without this bill, the condominium associations could not collect unpaid assessments following a foreclosure "unless they've perfected that lien, which in most instances is way too expensive and way too cumbersome for them." This discussion supports an interpretation that the bill was intended to "guarantee" collection from a new owner, even where the association had not previously filed a lawsuit for unpaid assessments.

¶ 21    We hold that Baldwin Court was not required to file suit against Sylva's predecessor owner in order to be entitled to up to six months of unpaid assessments from Sylva that accrued during its predecessor's ownership. We reverse the order granting summary judgment in Sylva's favor. Consistent with our prior statements, Baldwin Court is entitled to up to six months of unpaid assessments dating from the time Baldwin Court took the requisite action to enforce the obligation. See *Wing Street*, 2016 IL App (1st) 142563, ¶ 23.

¶ 22    The particular circumstances of this case present another issue that was not addressed by the parties. Baldwin Court did not in fact file suit against Sylva so as to "institute an action" to enforce collection. Here, Baldwin Court did not file suit to collect the unpaid assessments because it had already been paid by Sylva. Even though the payment was made under protest, it is clear that Baldwin Court always sought to enforce its right to collect the back assessments

from Sylva. "It is one of the oldest and perhaps the wisest maxims of equity that the law will not require a person to do a useless act." *Rock Island Y.W.C.A. v. Bestor*, 48 Ill. App. 3d 761, 765 (1977); see also *PNC Bank, National Ass'n v. Wilson*, 2017 IL App (2d) 151189, ¶ 25 (futile acts are usually excused). The fact that Sylva is the plaintiff in this case is of no consequence. Baldwin Court had no reason to file suit. The unavoidable result is that Baldwin Court is entitled to six months of back assessments from the foreclosure purchaser pursuant to section 9(g)(4).

¶ 23 One final matter, however, is that there remains a genuine issue of material fact regarding the amount Sylva owes Baldwin Court for the unpaid assessments. Monthly assessments for the unit were $258 at the relevant time. Baldwin Court required Sylva to pay $3485 for the "six months back assessments per statute" or $580.83 per month ($3485/6 months) without explanation. Baldwin Court did not move for summary judgment in its favor on this claim below, and its requested relief on appeal is that we "remand[ ] this case for further proceedings in accordance with a proper construction of [the statute]." There is not undisputed evidence from which we can order that judgment in an amount certain be entered in Baldwin Court's favor, and thus, we must remand the case for Baldwin Court to prove its damages.

¶ 24                                         CONCLUSION
¶ 25 Accordingly, we reverse and remand for further proceedings consistent with this opinion.

¶ 26 Reversed and remanded.